EXHIBIT

U

August 25, 2014

TO: TEXAS STATE BAR
From: JEFF H. WILLIAMSON

RE: Complaint Against Laura Fletcher Leavitt
Assistant Federal Public Defender.

Dear Texas STATE BAR:

Please find enclosed a complaint against Houston
Federal Public Defender, Laura Fletcher Leavitt for violation
of the Texas Rules of Professional Conduct and American
Bar Association (ABA), Rule 8.3 / Reporting Professional Misconduct.

On or about May 11, 2013, I drafted a complaint
to Laura Leavitt concerning federal prosecutors, J. Hamilton
Hileman and Ryan McConnell intentional withholding evidence
that resulted in 4- seperate violations of Rule 16, Federal
Rules of Evidence at my trial that raises substantial question
as to that lawyers honesty, trustworthiness, or fitness as a
lawyer that is a violation of my rights.

The violations cited herein may indicate a pattern
of misconduct that only a disciplinary investigation can uncover,
that poses a danger to the public. Both prosecutors used
dishonesty, deciet, and concealment of evidence they were
required by law to disclose, Rule 16, Fed R Crim P, that
resulted in a trial by ambush and wrongful conviction.

It is submitted that _Laura Leavitt_ refused and Failed to report the prosecutorial misconduct as required by Rule 8.3/Reporting Professional Misconduct.

On June 17, 2013, the public defenders office received my complaint on the prosecutorial misconduct with transcripts, as shown stamped on my envelope. (Attached Hereto)

Attorney, Laura Leavitt refused and Failed to report J. Hamilton Hileman and Ryan McConnell For intentionally withholding 4-pieces of evidence using dishonest and deceit (violation of Rule 8.4(c)) in violation of the law Rule 16, Fed R Crim P, and that conduct seriously interfered in the administration OF justice (violation of Rule 8.4(d). that violated my rights and resulted in a wrongful conviction.

Therefore, I allege that all attorneys or prosecutors named above acts or omissions constitute grounds For discipline pursuant to Texas State Bar 8.3 by Laura Leavitts refusal and Failure to report the prosecutorial misconduct as required by authority under the Texas State Bar.

Based on the Foregoing, I request sanctions, suspension, or disbarment, and any other relief the Texas State Bar deems appropriate. All attorneys involved above are a stain on the profession.

Respectfully Submitted

2

...al Correctional Institution
... JEFF HENRY WILLIAMSON
...quest...
.O. Box 1010    #44770b
Bastrop, TX 78602

Legal Mail

F / 77002166925

6/12/13

RECEIVED TENDER

HOUS... TEXAS
29447-016

'13 JUN 17 AM 8:37

Laura Leavitt
FED PUBL Defend Off#1350
440 Louisiana ST
Houston, TX 77002
United States

AUSTIN 13...
RIO GRANDE DISTR...
12 JUN 2013 PM...

---------------------------------------------------------------------------------------------

FROM: 29447016
TO: MS LAURA LEAVITT
SUBJECT: DEPTOF JUSTICE HARASSMENT/MISCONDUCT 18 U.S.C. 241
DATE: 05/11/2013 01:08:21 PM

COMPLAINT

The facts contained in this complaint and affidavit are based upon facts and records on file in my federal criminal case in United States Disdrict Court, Southern District of Texas, Houston Division: United States of America v Jeff Henry Williamson, Criminal No: 4:08-CR-539-1. I will refer to records filed in my criminal case by (Docket Entry No) so that files can be pulled printed or requested to verify my claims of government harassment and misconduct and coverup by employees of the Department of Justice.

Since this complaint and affidavit is being made for limited purposes of supporting a criminal complaint against Department of Justice employees for a criminal (Conspiracy Against Rights) a violation of Title 18, United States Code, Section 241 for having exercised my rights under the First Amendment to the United States Constitution, I have not set forth each and every fact or harassment incident in this conspiracy against my rights. Rather, I have set forth only those facts that I believe are neccessary to establish probrable cause so that the persons identified can be charged under 18 U.S.C. 241 for their acts or omissions.

The named Department of Justice emploees and unknown others, unlawfully, intentionally, and knowingly combined, conspired, confederated, and agreed together with each other and unknown persons to engage in a conspiracy against my rights in multiple districts in order to chill my First Amendment rights under the U.S. Constitution. I have also set forth a list of issues or topics that I have published or further exposed with public awareness that I believe are grounds that the government agents and employees have targeted and harassed me seeking to supress my protected First Amendment activities. The facts below identify and describe various acts or omissions by Department of Justice employees that meet all the elements of the conspiracy, 18 U.S.C. 241:


AFFIDAVIT

The facts below can be verified by pulling, printing, or requesting the records (Docket Entry) from my criminal case cited above:

I, Jeff H. Williamson, being duly sworn, do hereby depose and state:

1. My name is Jeff H. Williamson and I own and operate over 200+ political websites about Government Corruption and Coverups on several worldwide and nations issues as a matter of public interest and concern. See (Docket Entry 193 and 550 page 4) for a list of these political webpages.

2. I have been a government watchdog for about ten years designing and creating websites about mainstream worldwide and national issues such as the Iraq War, CIA Secret Prisons, NSA Spying Program, 35 Articles of Impeachment against George W Bush by Congressman Dennis Kucinich, Depleted Uranium, Shocking Congressional Reports such as www.gulfwarvets.com/senate and many other topics.

3. For nearly ten years, the named and unnamed persons listed herein, together with other other unknown persons, unlawfully, intentionally, and knowingly, combined, conspired, confederated, and agreed with wach other to harass and stalk me in retaliation for having exercised my First Amendment rights as a government watchdog.

4. The persons and unknown persons named in this complaint sought to disrupt, misdirect, discredit, smear, and otherwise neutralize my political activities and websites.

Specifically, I allege and the record shows:

+ that the actions and many non-actions of various government employees harassed me in multiple districts making threats and intimidating me for having exercised my First Amendment rights as a government watchdog.

+ that some or all of these wrongs flowed from a conspiracy 18 U.S.C. 241, or conspiracies amound the parties listed in

this complaint, who shared a wrongful meeting of the minds in the illicit official desire to neutralize me and my political activities

   Thus, it was the object of the conspiracy or conspiracies to:

   + create a harassment and stalking campaign against me designed to provolk, entice, lure and induce me to make a threat so that the FBI could prosecute me and put me in prison in a malicious effort to chill my First Amendment rights. The Fifth Circuit Court of Appeals recognizes this type of misconduct as ENTRAPMENT as noted in the Pattern Jury Instructions 1.28.

   + to use unknown individuals as part of the stalking campaign to create conflict by the harassment trying to cause confrontations and violence in a malicious effort discredit the political activities.

   + to conceal easily verifiable FBI harassment and misconduct in multiple districts.

   + to create a structual denial of my rights at trial in violation of the law Rule 16, Federal Rules of Criminal Procedure by producing 4 pieces of late evidence seeking a unfair tactical advantage resulting in a trial by ambush all in violation of my Due Process rights protected under the Fifth Amendment to the U.S. Constitution.

   + to disrupt or block any public awarness of the war crimes and waste, abuse and fraud being publihed on my websites about the government.

   + and other misconduct

   Overt acts by the named and unnamed parties involved in the conspiracy or conspiracies, 18 U.S.C. 241, would include but not limited to the following:

   1. On or about June 8, 2004, I was assaulted and spiked in the leg and threatened with death or prison by unknown FBI agents and informants while traveling through New Mexico and California to Las Vegas in retaliation for being a government watchdog seeking to intimidate me to remove my websites from the internet. As a direct result of the FBI misconduct I spent 9-days in Southern hills Hospital in Las vegas where I was treated for the injury and released. See (Docket Entry 486 pages 74 to 85 Hospital records filed in my case). Side Note: Dr Marisa Medina made a note in my medical file that she called a friend of mine, named John Garry Peeler who "Confirmed the Story" See (Docket Entry 486 page 79 for that note. The person called, John Garry Peeler is a former government agent, now federal whistleblower, who at that time was providing me with information about the government to put on my websites such as "Operation Mockingbird" and "The Haarp project".
See (Docket No 486, pages 86-101 for a story in a religious publication about John Garry Peeler. This incident meets elements conspiracy against my rights in violation of 18 U.S.C. 241 by these unknown FBI agents and informants.

   2. On February 22, 2005, and other dates, I filed complaints and restraining orders against a HLN/CNN news representative, Rudi Bahktiar and unknown FBI Agents from the Riverside FBI field office sending unknown individuals with threatening messages to remove my political websites from the internet and stop attending protest or face financial destruction and starve to death as noted in the restraining orders as well as destruction of my career. See (Docket Entry 486-1, pages 5 to 16- note there is a Docket Entry 486 and a 486-1 filed in the same file). But, let me say I believe the FBI was using her name without her knowledge or permission. Because I was sending CNN/HLN information for news stories, via text message on my cell phone through Sprint, I believe the FBI sought to create a conflict and disrupt the First Amendment information being provided to CNN/HLN. I do not believe Rudi Bahktiar was in any way involved in the conspiracy but rather the FBI used her name as part of its deception to stop my information to the media.

   3. Between October 23, 2005 to February 6, 2005, Denver FBI SA Brian Schmitt, his partner, and unknown Coloarado state investigators engaged in a stalking and harassment campaign against me running at me with weapons drawn and pointed at me and my head for the purposes of intimidation for having exercised my First amendment rights as a government watchdog in violation of 18 U.S.C. 241.

   Each incident I called FBI SA Schmitts supervisors, Denver FBI SAC Richard C Powers and SA Steve Olson to report the harassment and misconduct. Each time Denver FBI SA Schmitt wrote me three frivolous tickets on a Denver County Court Ticket Book for Distirbance By Telephone for having called his supervisers. See (Docket Entrty 550 filed in my case )The purpose is to show the following:

   + The three tickets were issued on Denver County Court Ticket Book.
      Oct 21, 2005 GD 797075
      Dec 06, 2005 GD 797076

---------------------------------------------------------------------------------------------

Feb 05, 2006 GD 797077
The tickets show FBI SA Schmitt as the complainant even though he is the person who wrote the tickets. The tickets are issued in his handwriting.

+ Our private investigator, Jim Willis, learned the identity of the officer who signed the tickets and turned them in to the Clerk as denver Police Office William Gallegos. We also learned that Officer Gallegos happens to be a member of the FBI Joint Terrorism Task Force.

+ The purpose is to show that both FBI SA Schmitt and Officer Gallegos DO NOT work for the County of Denver. Both officers DO NOT have jurisdiction or authority to write tickets on a Denver County Court ticket book .

+ The purpose is to the that the tickets issued by FBI SA Schmitt were written in about a 4-Month Period. But the ticket sequence is 797075, 797076, 797077. No other tickets were issued in that 4 month period as the records show.

+ The purpose is to show that Denver FBI SA Schmitt, his parner, Denver Police Officer Gallegos and unknown others sought to use the legal process abuse of power seeking to threaten and intimidate and harass me for having exercise my First Amendment rights as a government watchdog in violation of 18 U.S.C. section 241. The evidence meets all the elements of a criminal conspiracy under 18 U.S.C. 241

+ On Dec 06, 2005, Denver FBI Agent Brian Schmitt, his partner and other unknown state police came to my hotel at the Western Inn, 4757 Vasquez Blvd, Denver CO, and issued me a ticket at my hotel room. But, on all three citations FBI SA Schmitt wrote "transient" on each ticket as my address in an FBI effort to smear and discredit me. FBI SA Schmitt, his partner and police searched my hotel room without a warrant in violation of Title 18, United States Code, Section 2236 (Search Without Warrant) and in violation of my Fourth Amendment rights to the U.S. Constitution.

Based on the Denver FBI harassment, I reported FBI SA Schmitt's harassment to his supervisors, Special Agent In Charge, Richard C Powers and Special Agent Steve Olsen both who ignored my complaints and refused or failed to report the misconduct to FBI Headquarters Office of Professional Responsibility and the Inspection Division as required by FBI Policy. Instead, the Denver FBI harassemnt intensified by other unknown FBI Agents and informants. I also filed several complaints with Denver U.S. Attorneys Office and Department of Justice Office of Inspector General who is supposed to maintain proper oversight and accountability of DOJ employees all went unanswered and the harassment continued by the FBI and Police.

4. Title 18, United States Code, section 4 (Misprision of Felony) states "Whoever having knowledge of the actual commission of a felony congnizable by a court of the United States conceals and does not as soon as possible make know the same to some judge or other person... in civil authority under the United States, shall be fined under this title or imprisoned up to three years or both." The above Denver FBI Agent supervisors, FBI SAC Richard Powers and SA Steve Olsen recieved evidence (Tickets written by SA Brian Schitt as provided above) with my statement of the FBI and Police seeking to intimidate and threaten me for having exercised my First Amendment rights as a government watchdog meeting all the elements for a criminal conspiracy under 18 U.S.C. 241. These FBI Agents, The U.S. Attorneys Office and Department of Justice, Office of the Inspector General, Glenn A Fine concealed the conspiracy to protect Denver FBI Agent Brian Schmitt in violation of 18 U.S.C. section 4 by their acts and omissions.

Title 18, United States Code, section 3 (Accessory after the Fact) state: "Whoever knowing that an offense against the United States has been commited, recieves, relieves, comforts, or assist the offender in order to prevent his apprehension, trial or punishment, is an accessory after the fact. Both, Denver FBI SAC Richard Powers and SA Steve Olsen, the Denver U.S. Attorney and Department of Justice, Office of the Inspector General, Glenn A Fine, all recieved complaints and copies of the above tickets that clearly show a conspiracy 18 U.S.C. 241 and prevented FBI Brian Schmitts punishment. See Part II Attached hereto.

------------------------------------------------------------------------

FROM: 29447016
TO: M S LAURA LEAVITT
SUBJECT: DEPT OF JUSTICE/MISCONDUCT PART II/CONSPIRACY
DATE: 05/18/2013 02:21:34 PM

Title 18, United States Code, section 241 (Conspiracy Against Rights) states "If two or more persons conspire to injure, opress, threaten, or intimidate any person in the Free exercise or enjoyment of any right or priviledge secured to him by the costitution or laws of the United states, or because of his having exercised the same... shall be fined under this section or imprisoned not more than ten years or both."

   The evidence above such as the tickets written by Denver FBI Agent Brian Schmitt, his partner, Denver Police Officer William Gallegos, and unknown Colorado State investigators use of the legal process for harassment purposes without jurisdiction or authority with threats seeking to intimidate me because I exercised My First Amendment rights as a government watchdog (Docket Entry 193 Filed ) protected under the U.S. Constitution. The named persons involved acts and omissions meets all the elements of a criminal conspiracy under 18 U.S.C. 241 and violation of 18 U.S.C. 2236 (Search Without Warrant) at my hotel.

   The evidence shows that Denver FBI Agent Brian Schmitt, his partner, Denver police officer William Gallegos and unknown Colorado state investigators were involved in a criminal conspiracy in violation of 18 U.S.C. 241 and the records (Docket Entry 550) reflect the same as presented in this complaint. The evidence show three (3) seperate counts of a violation of 18 U.S.C. 241 by the writing of 3-frivolous tickets for harassment and intimidation purposes for having exercised my First Amendment rights as a government watchdog. (Docket Entry 193 and 550).

   5. As stated in paragraph 2 above, I filed 3-Restraining Orders in Superior Court,County of San Bernardino, CA, Rancho Cucamonga District, Case# RVC 085883 + two others because I recieved several threats from FBI Agents in multiple districts along with unknown persons believed to be FBI informants using CNN/HLN news anchor Rudi Bahktiar's name advising me that my life and DJ Blaze career would be destroyed and (starve me to death) if I did not STOP my political activities and creating websites about the government and the media related to the CIA secret project called "Operation Mockingbird"

   Sometime later, the theft of my deejay music collection occured in Commerce City, Colorado suburb of Denver CO believed to be stolen by Denver FBI Agent Brian Schmitt, his Parner, Denver Police Officer William Gallegos, and unknown FBI informants based upon his use of the legal process for harassment and threats of destroying my career. See, Commerce City, CO, Police Department, Police Report No 13CN06003254, taken by Officer Michael Vasquez, who took a statement from a witness, and saw two persons steal my music CD bag, while I was washing clothes.

   The named FBI Agents acts and omissions sought to intimidate me including interference with the lawful employment or livelyhood as a deejay in retaliation for me having exercised my First Amendment rights as a government watchdog in furtherance of the conspiracy 18 U.S.C. 241 by the theft of my deejay music collection. The restraining orders show that I reported the threats and intimidation in the middle of the criminal conspiracy 18 U.S.C. 241. And the named FBI Agents and unknown informants followed through on the threats and intimidation in my travels from California to Denver, Colorado by the theft of my deejay music collection in furtherance of the conspiracy. It is no coincidence that I filed complaints about financial destruction with restraining orders in California and traveled to Denver Co area where my compact disc used as a deejay were stolen in an effort to disrupt my income and harm my career.

   6. During this period, I recieved a series of death threats, as many as a dozen in all around the same time Denver FBI Agent Brian Schmitt wrote me 3-frivolous tickets without jurisdiction or authority. See (Docket No 486-1, page 41-42. NOTE: Docket Entry 486 and 486-1 are stacked on top of each other in the same file) for a message left on one of my message boards on my website. I filed a complaint with the Denver FBI telling them that that it was a federal offense interstate communication under 18 U.S.C. 875(c) by the threat against me and the FBI could identify the person who sent the threat by the IP address. But, the FBI refused to do anything because the FBI is the one who sent the threat against me.

   Another found taped to my hotel room door at the Western Inn near downtown Denver was a xerox copy of my photo from my Las Vegas work permit card necessary to be employed at nightclubs through the city or state. The photo was enlarged with crosshairs of a rifle scope drawn over my face. The only persons who had access to my photo was law enforcement. These were laughed off by the FBI as well as the restraining orders, the tickets, and the theft of my dj music collection.

   7. On October 31, 2006, unknown FBI Agents, believed to be directed by Denver FBI Agent Brian Schmitt changed and tampered with my DJ Blaze website while seeking employment and disrupt my income. See (Docket Entry 486-1, page 50) for a printout of the changed website. www.freewebs.com/djblazemusic is the correct DJ Blaze website.

-------------------------------------------------------------------------------------------------------

8. On or about August 14, 2006, in California, the content on my watchdog group website on the Government Hall of Shame was completely and unlawfully erased from the site losing months of work. I filed a complaint with the FBI and told them that the FBI could track the IP address of the person who ilegally accessed my account but refused to investigate protecting the FBI agents behind the misconduct and conspiracy.

9. During this same time period, unknown FBI Agents, believed to be directed by Denver FBI Brian Schmitt kept illegally removing my political website homepage from the GOOGLE search engine while attending protest across the country. Each time I created a protest sign that read "Bush-Cheney Crimes" "GOOGLE: renegade movement, the FBI would unlawfully somehow remove my site from the search engine so it would not appear. I filed 3-complaints with GOOGLE who reposted my site each time. But the disruption is a serious violation of the First Amendment under the U.S. Constitution. The FBI is supposed to protect and enforce civil rights and they refused to do anything because they were the ones behind the misconduct.

10. There are dozens of incidents similar to these incidents that occured across the country. All of my claims can easily be verified by records as cited above in my case. All allegations against named and unknown FBI agents and Police can be confirmed by simply pulling the above listed cited records. The most disturbing aspect of our investigation revealed that the FBI has a 70-year history of targeting and harassment of citizens who are involved in political activities. See (Docket Entry 131, filed in my case for similar FBI Misconduct.

11. In July 2008, the Houston FBI Special Agent, Christopher Petrowski brought a politically motivated prosecution against me seeking to chill my free speech for having exercised my First Amendment rights as a government watchdog and to block my complaints against the above named FBI Agents and Police with FBI HQ OPR and Inspection Division and DOJ OIG, Glenn A Fine, who are supposed to investigate complaints of DOJ/FBI misconduct.

The FBI conducted a sham investigation into the alleged threat against the FBI. The crime allegedly occured at the Houston Public Library. The FBI/Government does not have a computer or harddrive. The FBI cannot even tell us what floor the alleged threatening email came from. The FBI cannot even place me at the Houston Public Library. FBI SA Petrowski testified that he did not go down to the library to obtain a copy of the surveillance tape from security even though there was a threat to kill FBI Agents.

Armed with all this information, U.S. Attorneys Office, Houston, TX federal prosecutors, Jay Hileman and Ryan McConnell as well as Houston TX FBI Agents Christopher Petrowski and Sheri McCullers sought to coverup all of the above government misconduct in court proceedings that reveals a propensity or willingness to twart the accertainment of the truth in a judicial proceeding and seek to exploit the law and even violate the law and rules of the court seeking a unfair tactical advantage resulting in a trial by ambush and wrongful conviction in order to protect the named FBI agents all as furtherance of the conspiracy.

Additionally, these federal prosecutors and the named FBI agents above conspired to a introduce evidence past the Discovery Deadlines in violation of Rule 16, Federal Rules of Criminal Procedure (the law Congress put in place to protect accused rights) presenting four (4) pieces of late evidence at trial seeking a trial by ambush as recognized by the Fifth Circuit Court of Appeals resulting in a wrongful conviction. The named federal prosecutors used unlawful and unfair methods that violated my DUE PROCESS rights protected under the Fifth Amendment of the U.S. Constitution, and are a danger to the public by that misconduct.

—>SEE (EXHIBIT A)
    + Trial Transcripts (Docket Entry 487, page 7, lines 12-25 to page 9) This portion of the trial transcript shows my objection to Jay Hilemans violation of Rule 16 Fed R Crim P and his acknowledgement that he was producing the late discovery. See (Docket Entry 487, page 9, lines 4-13) filed in my case. Judge David Hittner excluded that evidence. see Trial Transcrips (Docket Entry 487, page 9, lines 10-13).

Despite Judge Hittners ruling, Jay Hileman again sought to violate the law and Rule 16, Fed R Crim P seeking to introduce this late evidence the day of trial not giving the defense an opportunity to prepare for the evidence as the Rules and law require. See (Docket Entry 487, page 115, lines 21 to 25 to page 116 lines 1-4) on this same evidence Judge Hittner excluded above. Judge Hittner decided to legislate from the bench as a federal judge and ignor Rule 16, Fed R Crim P that Congress put into place to protect accused rights, and changed his ruling and allowed the government to wrongfully introduce this late evidence in violation of the law and my rights. See (Trial Transcripts 487, page 116, lines 5 through 12).

This attorney misconduct reflects dishonesty seeking a unfair advantage in complete disregard for the law and the accused rights that poses a danger to the public by using these tactics against criminal defendants all in violation of the Rules set forth by the Texas State Bar concerning dishonesty and deciet by attorneys.

→ (EXHIBIT A)(PART 2)

+ Trial Transcrips (Docket Entry 487, page 119, lines 16-25 to Page 120, lines 1-23, further shows OBJECTIONS to a second piece of late evidence by the government in violation of the Law Rule 16, Fed R Crim P and my DUE PROCESS rights protected under the Fifth Amendment to the U.S. Constitution. The spirit of Discovery Rule 16, Fed R Crim P, is to avoid a trial by ambush. See United States v Kelly 420 F2d 26 (2nd Cir 1969). Also see (Trial Transcripts (Docket Entry 487, page 125, lines 23-25 to page 126, lines 1-10).

The prosecutors failed to disclose the evidence EXHIBIT 12 which was used in direct examination of government witnesses subverted Rule 16, Fed R Crim P and prejudiced my case and deprived me an opportunity to prepare for trial and design an intelligent trial stategy and prevented me from any meaningful cross examination of the government witnesses. That prosecutor dishonesty and deciet prejudiced me by intentionally withholding the evidence.

→ (EXHIBIT B)

+ Trial Transcrips (Docket Entry 488, page 256, lines 14-25 to page 260, lines 1-17) shows J Hileman produced a third piece of evidence a week before trial in violation of Rule 16 Fed R Crim P and my DUE PROCESS rights protected under the Fifth Amendment to the U.S. Constitution that resulted in a trial by ambush and wrongful conviction.

Judge David Hittner wrongfully and unlawfully ignored Rule 16, Fed R Crim P that Congress put into place to protect the accused rights and decided to legislate from the bench and allow the prosecutor deciet and misconduct. Judge Hittner also poses a danger to the public by such rulings in violation of the law and accused rights.

The federal prosecutors deprived me an opportunity to prepare for trial for this evidence. See United States v Lanoue 71 F3d 966 (1st Cir 1995).

→ (EXHIBIT C)

+ Trial Transcripts (Docket Entry 488, pages 362, lines 10-25 to page 368, lines 1-7 shows judge David Hittner EXCLUDING evidence a third Discovery violation by prosecutors. But prosecutor Jay Hileman wrongfully and unlawfully showed the excluded evidence anyway for demonstration purposes in violation of that ORDER and my DUE PROCESS rights protected under the Fifth Amendment to the U.S. Constitution. See Trial Transcrips (Docket Entry 488, page 369, lines 6-25) shows Jay Hileman (continued )

FROM: 29447016
TO: ms LAUCA LEAVITT
SUBJECT: DEPT OF JUSTICE MISCONDUCT/PART III
DATE: 06/02/2013 09:25:50 PM

showed that EXCLUDED evidence in violation of Judge Hittners ruling and my rights

   + Trial testimony/Cross examination of government witness Edward Shelkey from my trial who stated that the government cannot say with certainty that I sent the threatening email. See (Trial testomony (Docket Entry 487, pages 162, lines 11-25 to page 163, lines 1-14). The governments own expert witness from the Department of Justice HQ agrees with the defense that the government cannot identify me as the sender of the email. This creates reasonable doubt and a jury must return a NOT GUILTY verdict or the federal judge must GRANT our Judgement of Aquittal for lack of evidence.

   + Trial testimony/Cross examination of government witness Jeffrey Stanford with Yahoo, clearly testified that it was possible for anyone to gain illegal access to Yahoo accounts. See (Docket Entry 488, pages 413 to 418).

   12. The Department of Justice, Office of Inspector General, Glenn A Fine, is responsible for accepting complaints for investigation of violation of civil rights or misconduct filed against Department of Justice employees such as the FBI, DEA USMS, BOP, etc and to maintain proper oversight and accountability for such misconduct. For nearly ten years I have filed countless complaints with records and evidence on file in my case and cited herein all of which have gone unanswered in a malicious effort to protect FBI agents from accountability and prosecution for the conspiracy presented herein.

   Mr Glenn Fine has knowingly and willfully allowed the misconduct and conspiracy to continue and refused to stop it and protect and enforce my rights for nearly ten years that resulted in this current crisis and injustice. At a minimum, Mr Fine should be held accountable as an accessory after the fact 18 U.S.C. section 3, or be made part of the conspiracy under 18 U.S.C. section 241 for his acts or omissions.

   13. The Deaprtment of Justice, Office of Professional Responsibility, H. Marshall Jarrett, is responsible for accepting complaints filed against federal prosecutors for misconduct described herein. Mr Jarrett has refused to hold the named federal prosecutors Jay Hileman and Ryan McConnell accountable for his deciet and violation of the law and Rules and my rights that resulted in a wrongful conviction in a malicious effort to coverup and protect FBI Agent misconduct.

   All of the persons named above furthered the conspiracy 18 U.S.C. 241 by ratifying and adopting the acts and omissions of each other as members of the conspiracy or conspiracies. The government representatives knew of some or all of the wrongful acts and omissions desribed herein, but they nevertheless knowingly assisted in the performance of those wrongful acts or omissions and engaged in active concealment of verifiable FBI Misconduct, and used deciet and misreprested facts to the court and public, or otherwise participated in the conspiracy as alleged.

   The named and unnamed persons listed above acted with malice in connection with the misconduct and coverup of FBI/Government harassment as provided herein. I therefore request that the parties listed in this complaint and affidavit be dealt with according to the law as referenced to in this complaint. All claims made herein are easily verifiable by the cited records filed in my case.

   I hereby declare upon the facts and information on file in my criminal case and upon information and belief under penalty of perjury, that the foregoing is true and correct to the best of my knowledge.

Attachment: (Exhibits A - C)
          TRANScript

Respectfully Submitted,
Jeff H. Williamson

   P.S. If any assistance is needed in locating any cited aforestated court records, please contact the Houston Federal Public Defenders Office, Laura Leavitt, 440 Louisiana St, Houston, Texas 77002 (713)218-4600. Although Ms Leavitt is no longer representing me she still can offer assistance in locating court files or records in my case that verify all of my claims set forth herein.

E X H I B I T

A

Trial Transcripts Docket No 487, page 7, lines 12-25 to
page 9. This portion of the Trial Transcript shows my objection
to J. Hilemans violation of Rule 16, Fed R Crim P and His
acknowldgement that he was producing the late discovery the day
of trial. See (Docket No 487, page 9, lines 4-13) attached hereto,
that shows the prosecutor seeking a "Trial By Ambush" in violation
of the law and my Due Process rights protected under the Fifth
Amendment to the U.S. Constitution. Judge Hittner excluded that evidence.
See, Trial Transcripts Docket No 487, page 9, lines 10-13. Attached Hereto

Despite Judge Hittners Ruling above, J Hileman again sought
to violate the law, Rule 16, Fed R Crim P seeking to introduce this
late evidence Governments Exhibit 12 seeking an unfair tactical
advantage in a "Trial By Ambush" in violation of my Due Process
rights protected under the Fifth Amendment to the U.S. Constitution.
See (Docket No 487, page 115, lines 21 to 25 to page 116, lines 1-4
Attached Hereto). Judge Hittner changed his ruling and let the late
discovery in in violation of the law and my rights as sited above.
See Trial Transcrips, Docket No 487, page 116, lines 5 through 12)
Attached hereto.

Docket No 487

| | |
|---|---|
| 0:12 | 1 |
| | 2 |
| | 3 |
| | 4 |
| 10:12 | 5 |
| | 6 |
| | 7 |
| | 8 |
| | 9 |
| 10:12 | 10 |
| | 11 |
| | 12 |
| | 13 |
| | 14 |
| 10:13 | 15 |
| | 16 |
| | 17 |
| | 18 |
| | 19 |
| 10:13 | 20 |
| | 21 |
| | 22 |
| | 23 |
| | 24 |
| 10:13 | 25 |

1    Okay.  All right.  I guess we are ready to go.  I

2  have got the juror sheets.  I'm going to go through them.

3    After it is done, we may have to call them

4  forward, so if one of the marshals want to come forward,

5  because what we do after we interrogate the individual jurors,

6  it is done up here.  Okay.  And he's entitled to be up here.

7  Okay.

8    THE MARSHAL:  Yes, sir.

9    MR. WILLIAMSON:  Judge, may I address the Court just

10  briefly?

11    THE COURT:  Yes, sir.

12    MR. WILLIAMSON:  It has been brought to my attention

13  through Mr. Essmyer that the government has filed some

14  additional tapes.  I think it was 5:00 this morning, and I

15  think -- would you like to go over that now or later, Judge?

16    THE COURT:  What is it?  What have you just filed?

17    MR. HILEMAN:  Well, we intend to offer an additional

18  exhibit.  One of our exhibits is a few phone calls he left for

19  Don DeGabrielle.  We discovered that maybe once inadvertently

20  he called and left a message for Cynthia DeGabrielle.  And we

21  would submit that the phone message the defendant left which

22  preceded this e-mail message is relevant to it and relevant to

23  his identity as the person that sent the e-mail message.

24    THE COURT:  What does it say?

25    MR. HILEMAN:  It says -- the defendant says for the

Docket No 487

| 10:13 | 1 | United States Attorney to make sure they play this phone |
| | 2 | message in his trial, and the defendant explains in detail his |
| | 3 | political views and he explains how agents of the FBI are |
| | 4 | attempting to get him to act in a violent or threatening manner |
| 10:13 | 5 | toward the government. |
| | 6 | THE COURT: What is your response? |
| | 7 | MR. WILLIAMSON: Judge, my response is the government |
| | 8 | has had 19 months to prepare -- |
| | 9 | THE COURT: What are you reading from? Your notes or |
| 10:14 | 10 | something somebody prepared? |
| | 11 | MR. WILLIAMSON: I'm not reading. This is my own |
| | 12 | words. |
| | 13 | THE COURT: All right. Go on. |
| | 14 | MR. WILLIAMSON: The government has had 19 months to |
| 10:14 | 15 | prepare for this case. They have had this evidence the whole |
| | 16 | time. |
| | 17 | THE COURT: Yeah. How come you just want to put it in |
| | 18 | today? |
| | 19 | MR. HILEMAN: Well, we just located this particular |
| 10:14 | 20 | piece of evidence. There is no -- first of all, there is no |
| | 21 | legal objection to it. It is relevant and it is his voice. |
| | 22 | As far as surprise, I think the defendant knows |
| | 23 | the contents of it already at this time. |
| | 24 | THE COURT: Why didn't you submit it a couple weeks |
| 10:14 | 25 | ago? |

10

Docket No 487

| | | |
|---|---|---|
| 0:14 | 1 | MR. HILEMAN:  We submitted numerous exhibits |
| | 2 | previously so that they would be preadmitted and asked at the |
| | 3 | pretrial conference that they be preadmitted. |
| | 4 | THE COURT:  When were all of the exhibits due? |
| 10:14 | 5 | MR. HILEMAN:  I'm not sure.  But we certainly did miss |
| | 6 | that deadline.  However, the other exhibits, Your Honor, all of |
| | 7 | our other exhibits were submitted over a year ago.  They still |
| | 8 | were objected to on very tenuous authentication grounds at the |
| | 9 | pretrial conference. |
| 10:15 | 10 | THE COURT:  Right now I'm going to sustain the |
| | 11 | objection.  Right now it is out.  If you need to use it, let me |
| | 12 | know and I will listen to it and I will see in the context. |
| | 13 | Right now it's out. |
| | 14 | How much time do we have for the opening |
| 10:15 | 15 | statements? |
| | 16 | THE CASE MANAGER:  Fifteen minutes. |
| | 17 | MR. WILLIAMSON:  May I address that, Your Honor? |
| | 18 | THE COURT:  Opening statements? |
| | 19 | MR. WILLIAMSON:  Mr. Essmyer and I spoke, and I think |
| 10:15 | 20 | in order for me to tell my story, I was going to ask the Court |
| | 21 | to maybe give me a little leeway, about 20 minutes. |
| | 22 | THE COURT:  No way.  No way.  In all of my cases, |
| | 23 | civil and criminal, I go 15 minutes.  That's it.  Yours is no |
| | 24 | different.  And I suggest that -- remember, what you need to do |
| 10:15 | 25 | is state what the evidence will state, or I will be right on |

Opening Statement by Mr. Williamson   Docket N, 487

| 14:27 | 1 | It is now 12:25 p.m. We will take a ten minute |
| | 2 | break. Check your watch. We will be back in ten minutes. |
| | 3 | You'll stand and go into the jury room. |
| | 4 | *(Court recessed at 2:27 p.m.)* |
| 14:27 | 5 | *(Court resumed at 2:40 p.m.)* |
| | 6 | *(Jury not present)* |
| | 7 | THE COURT: Any objections filed pursuant to our local |
| | 8 | rules? Any objections filed pursuant to our local rules of |
| | 9 | procedure, by the government, as to any of theirs? |
| 14:40 | 10 | MR. HILEMAN: The only exhibits I have been tendered |
| | 11 | from the defense are pictures of the library. |
| | 12 | THE COURT: And you tendered yours to them? |
| | 13 | MR. HILEMAN: I have. |
| | 14 | THE COURT: Have you filed pursuant to our local rules |
| 14:40 | 15 | of procedure? |
| | 16 | MR. WILLIAMSON: Yes, we have, Your Honor. |
| | 17 | THE COURT: Where are they? |
| | 18 | MR. ESSMYER: They were filed in 2008. |
| | 19 | THE COURT: Then we will take them step by step like |
| 14:41 | 20 | they do in state court. |
| | 21 | MR. HILEMAN: While we are on the exhibits and the |
| | 22 | jury is out, in response to defendant's opening argument that |
| | 23 | he is nonviolent, peaceful and he is framed and the evidence is |
| | 24 | fabricated. I reurge Government's Exhibit Number 12. It is a |
| 14:41, | 25 | tape that this witness can authenticate in addition to the |

```
4:41     1   other tapes.
         2           THE COURT:  I will consider it at the time.  Who is it
         3   coming in through?
         4           MR. HILEMAN:  Ms. Stephens, Your Honor.
14:41    5           THE COURT:  Okay.  On that ground, the objection is
         6   now overruled.  It is coming in.  Let's go.  Let's get them in.
         7   I'm not handling anything else.
         8           MR. ESSMYER:  This defendant has never even heard the
         9   tape.
14:41   10           THE COURT: . Let's go.  You are stand-by, please.
        11           MR. WILLIAMSON:  I haven't prepared for that tape,
        12   Your Honor.
        13       (Jury present)
        14           THE COURT:  Go right ahead, please.
14:42   15           LAURA M. STEPHENS, DULY SWORN, TESTIFIED:
        16                      DIRECT EXAMINATION
        17   BY MR. HILEMAN:
        18   Q   Please state your name.
        19   A   Laura M. Stephens.
14:42   20   Q   How are you employed?
        21   A   I'm the systems manager for the United States Attorney's
        22   Office for the Southern District of Texas.
        23   Q   Is that in Houston?
        24   A   Yes, it is.
14:42   25   Q   And what's the address of the office here in Houston?
```

E X H I B I T

A

(Part 2)

Trial transcripts Docket No <u>487</u>, page 119, lines 16-25 to page 120, lines 1-23. This portion of the transcript further shows Objections to the Governments late evidence that was introduced in violation of the law, Rule 16, Fed R Crim P and in violation of my Due Process rights protected under the Fifth Amendment to the U.S. Constitution.

Trial Transcripts Docket No <u>487</u>, page 125, lines 23-25 to page 126, lines 1 to 10 show further objections to this same late evidence introduced by J. Hileman in violation of the law and my rights as noted above demonstrating dishonesty seeking an unfair trial. The spirit of Discovery Rules, Rule 16, Fed R Crim P, is to avoid a trial by ambush. See <u>United States v Kelly</u> 420 F2d 26 (2nd Cir 1969).

Prosecutor failure to disclose tape recording Exhibit 12 which was used in direct examination of government witness subverted Rule 16, Fed R Crim P purpose and prejudiced the defendant by depriving me of an opportunity to prepare for trial and design a intelligent trial strategy and position in cross examination that acted dishonestly and therefore prejudiced the defendant by withholding this evidence. U.S. v <u>Lanoue</u> 71 F3d 966 (1st Cir 1995).

14

FROM DOCKET ENTRY NO TOI

(119)

Docket No 487

*Hileman Direct of Laura M. Stephens*

14:44 1  A   Yes, sir, they are.

2  Q   And do you keep those records in the regular course of

3  business in the office?

4  A   Yes, we do.

14:44 5  Q   You have before you two CDs marked Government's Exhibit

6  Number 4 and Exhibit Number 12; is that correct?

7  A   Yes, I do.

8  Q   Are those the records that we have been discussing that you

9  maintained, the phone messages that you maintained for the

14:45 10  office?

11  A   Yes, they are.

12      MR. HILEMAN:  At this time, I will offer into evidence

13  Exhibits 4 and 12.

14      THE COURT:  Is that under 8036?

14:45 15     MR. HILEMAN:  Yes, Your Honor, as a business record.

16      THE COURT:  Any objection?

17      MR. WILLIAMSON:  I object, Your Honor.  We received no

18  chain of custody forms from the government, from the FBI or the

19  Department of Justice and seeking to establish --

14:45 20     THE COURT:  What are you reading from?

21      MR. WILLIAMSON:  My notes.

22      THE COURT:  Your own words or notes prepared by

23  somebody else?

24      MR. WILLIAMSON:  No.  It's in my writing.

14:45 25     THE COURT:  That didn't answer the question.

*Hileman Direct of Laura M. Stephens*   Docket No. 487

14:45   1          MR. WILLIAMSON: I prepared -- all this right here is

2     what I prepared. I'm seeking to establish a chain of custody.

3          THE COURT: Take a look at 8036. What about that

4     rule? How does that apply?

14:45   5          MR. WILLIAMSON: I'm seeking to establish Federal

6     Rules of Evidence 901 governing the authenticity of the

7     evidence. Any break in the chain of evidence goes only to the

8     weight of the evidence and is not admissible.

9          THE COURT: What is your response?

14:46  10          MR. HILEMAN: Well, first of all, what he is saying is

11    a break in the chain of evidence goes only to the weight, not

12    the admissibility, so I'm urging the record, the records be

13    admitted, but I'm also urging them under Rule 803 as a business

14    records hearsay exception in which no chain of custody need be

14:46  15    established; however, she has established that she maintained

16    these records until today.

17          THE COURT: Overrule the objection. Go right ahead.

18    They are admitted.

19          MR. HILEMAN: At this time may I demonstrate the tapes

14:46  20    for the jury?

21          THE COURT: Go right ahead.

22          MR. WILLIAMSON: But, Your Honor --

23          THE COURT: I have ruled. Have a seat.

24          Hold it. You started too fast. Try it again.

14:46  25     *(Telephone voicemail message played, as follows:)*

UNCAS 2185

*Hileman Direct of Laura M. Stephens*    Docket No 487

| 14:51 | 1 | motherfucking messages do you not |
| | 2 | under-motherfucking-stand?  You better |
| | 3 | call Michael Mukasey and get this |
| | 4 | motherfucking shit straightened out |
| 14:51 | 5 | rather motherfucking quickly, because I |
| | 6 | will not sit back and be attacked and |
| | 7 | harassed and have my rights violated one |
| | 8 | motherfucking second longer. |
| | 9 | Now" -- |
| 14:51 | 10 | THE COURT:  All right.  Do you have to play the whole |
| | 11 | thing?  I think we get the message. |
| | 12 | MR. HILEMAN:  It is finished, Your Honor. |
| | 13 | THE COURT:  What's your question? |
| | 14 | MR. HILEMAN:  Now, the United States requests |
| 14:51 | 15 | permission to demonstrate Exhibit Number 4, the calls to Don |
| | 16 | DeGabrielle. |
| | 17 | THE COURT:  Go on.  Are there transcripts of this?  Do |
| | 18 | you have transcripts of this? |
| | 19 | MR. HILEMAN:  They are not transcribed. |
| 14:52 | 20 | THE COURT:  This is to the U.S. Attorney's Office, |
| | 21 | correct? |
| | 22 | MR. HILEMAN:  Yes, Your Honor. |
| | 23 | THE COURT:  All right.  Go on.  How long is the next |
| | 24 | one?  About the same length? |
| 14:52 | 25 | MR. HILEMAN:  It is four calls of the same length, so |

*Hileman Direct of Laura M. Stephens*     Docket No 487

14:52   1    it will be four five-minute calls.  We won't play all four of

2    these.

3             MR. WILLIAMSON:  I object to all of these, Your Honor.

4    I object to these other phone calls.

14:52   5             As I said, I don't know how they were obtained,

6    when they were obtained, where they were obtained.

7             THE COURT:  They already told you.  They already told

8    you.  For the record, overruled.

9             Let's go.  Are they all the same length of time

14:53  10    as the --

11             MR. HILEMAN:  The voice mail only holds five minutes,

12    so it stops recording after five minutes each time.  And we

13    will just play one of the four, Your Honor.

14             THE COURT:  Play what you need to.

14:53  15    *(Telephone voicemail message played, as follows:)*

16             "Yes, Don, Jeff Williamson, I left you

17             two messages concerning some harassment,

18             misconduct and abuse, gang stalking and

19             this complete miscarriage of justice.

14:53  20             You know, Don, I tell you, I have got my

21             old cell phone records dating back,

22             what, five or six years ago, whenever it

23             was, that show where I have, what, 600

24             calls or more to the FBI Inspection

14:54  25             Division, FBI OTR Division, to the

E X H I B I T

B

Trial transcript Docket No 488, page 256, lines 14-25 to
page 260, lines 1-17. This portion of the trial transcripts show
J Hileman produced another piece of evidence a week before trial
for a second violation of Rule 16, Fed R Crim P, and in violation
of my Due Process rights protected under the Fifth Amendment to the
U.S. Constitution that resulted in a trial by ambush and wrongful
conviction.

U.S. District Court, Judge David Hittner, wrongfully and
unlawfully ignored Rule 16, Fed R Crim P, that Congress put in
place to protect defendants rights and decided to legislate from
the bench and allowed the prosecutor misconduct. Judge Hittner is
also a danger the the public by ignoring Rules and laws enacted by
Congress designed to protect defendants rights.

The prosecutors deciet, J Hileman and Ryan McConnel withholding
this second piece of evidence demonstrates intentional misconduct
of violation of Rule 16, Fed R Crim P and my Due Process rights
by depriving me of an opportunity to prepare for trial and design
a intelligence trial strategy and questions for cross examination.
That such dishonesty and deciet prejudiced the defendant by withholding
[illegible]

19

10:43  1   Internet called Thunderbird.  You download that also and then

2   it seeks out that text file and then arranges it where you can

3   read it.

4   Q   When you are viewing the contents of that disc through

10:43  5   Thunderbird, does it show up essentially as a Yahoo e-mail user

6   would see the contents of the e-mail?

7   A   Yes.

8   Q   Is it fair to say it is a snapshot of the e-mail account at

9   the time the search warrant was served on Yahoo?

10:44  10   A   Yes.

11   Q   And did you go look and look through some of the e-mails on

12   the Yahoo account?

13   A   Yes.

14   Q   Did you see e-mails that were similar in nature to the one

10:44  15   that I have up on the screen, which is United States Exhibit

16   Number 1?

17   A   Yes, sir.

18   Q   Did you print e-mails that -- off of that CD and which we

19   have here in court?

10:44  20   A   Yes.

21   Q   I'm handing you Government's Exhibit Number 5.  Do you

22   recognize Government's Exhibit Number 5?

23   A   Yes.

24   Q   What is Government's Exhibit Number 5?

10:44  25   A   It is several e-mails captured from that search warrant.

(157)

Docket No 488

*McConnell Direct Continued of Christopher Petrowski*

10:44   1   Q   What is the Bates range, the little numbers there, 5-1?

2   What is the range there on United States Exhibit Number 5?

3   A   It looks like 5-1 through 5-10.

4   MR. WILLIAMSON:  Your Honor, I object to these

10:45   5   exhibits.  I never received these.  I never was provided these

6   exhibits.  I never -- I don't know what he is talking about.

7   THE COURT:  What is your response?

8   MR. McCONNELL:  Your Honor, we provided the defendant

9   with a copy of the CD, the Yahoo e-mail search warrant CD, I

10:45   10   think, a month ago, but then there was an error with the CD and

11   we provided a replacement CD at the pretrial conference.

12   THE COURT:  What is your exhibit number?  There is an

13   exhibit number up there.

14   MR. McCONNELL:  This is Exhibit Number 1, but I

10:45   15   haven't offered the exhibits that Agent Petrowski has in his

16   hand.  That is Exhibit 5-1 through 5-11.

17   MR. WILLIAMSON:  Those are the ones I never seen,

18   Judge.

19   MR. McCONNELL:  Those are e-mails that were printed

10:45   20   out from the CD that the United States has provided to the

21   defendant.

22   THE COURT:  Provided to the defendant and his standby

23   counsel?

24   MR. McCONNELL:  Yes, Your Honor.

10:46   25   THE COURT:  Overrule the objection.

21

Docket No 488

*McConnell Direct Continued of Christopher Petrowski*

10:46   1         MR. McCONNELL:  For the record, Your Honor, I will

2   move to admit the CD and the e-mails that Agent Petrowski has

3   in his hand under the business records exception for the CD,

4   the contents of the CD, the e-mails are statements of the

10:46   5   defendant.

6         THE COURT:  Do you think you proved it sufficiently

7   under 8036?

8         MR. McCONNELL:  Yes, I have, Your Honor, and we have a

9   Yahoo witness who is going to be here later today.

10:46   10        THE COURT:  With that understanding, it is admitted.

11   What exhibit number now is it?

12        MR. McCONNELL:  The disc is --

13        THE COURT:  What exhibit number?

14        MR. McCONNELL:  Exhibit 5, Your Honor, and the e-mails

10:46   15   are 5-1 through 5-11.

16        THE COURT:  5-1 through 5-11 is what is on the disc;

17   is that correct?

18        MR. McCONNELL:  Yes.

19        THE COURT:  And everything else has been proved up; is

10:46   20   that correct?

21        MR. McCONNELL:  Yes, Your Honor.

22        THE COURT:  All right.  I have admitted it.

23             Go right ahead.

24  ────→  MR. WILLIAMSON:  Excuse me, Judge.  I have the

10:46   25   government's evidence notebook and they are not in here.

259

*McConnell Direct Continued of Christopher Petrowski*   Docket No 488

0:47  1    →    THE COURT:  That's what I mean, Counsel?  Where is it?

2         MR. McCONNELL:  The CD was provided to the defendant

3    at the pretrial conference.

4         THE COURT:  Is it listed in your exhibit book?

10:47  5   MR. WILLIAMSON:  It's not, Judge.

6         MR. McCONNELL:  The CD is listed in the exhibit book.

7         THE COURT:  Where?

8         MR. WILLIAMSON:  But the e-mails --

9         THE COURT:  Hold it.

10:47  10  MR. WILLIAMSON:  Sure, Judge.

11        THE COURT:  Have a seat.  I'm checking on it.

12        MR. McCONNELL:  It is Exhibit Number 5.

13        THE COURT:  Was that identified as an exhibit, a trial

14   exhibit?  Hold it.

10:47  15    *(Pause)*

16        MR. McCONNELL:  It is on the exhibit list filed in

17   2008, Your Honor, as Exhibit Number 5.

18   →    THE COURT:  And it was provided at that time?

19        MR. McCONNELL:  Well, a CD was provided earlier that

10:47  20  had an error.

21        THE COURT:  My question is:  Was it provided at that

22   time?

23        MR. McCONNELL:  The CD that Agent Petrowski has in his

24   hand was not provided at that time.

10:43  25   THE COURT:  When was it provided?

*McConnell Direct Continued of Christopher Petrowski*                    Docket No 488

10:48   1    MR. McCONNELL: At the pretrial conference.

        2    THE COURT: How long ago was that?

        3    → MR. McCONNELL: Week before last, Your Honor.

        4    THE COURT: And it was also provided to standby

10:48   5    counsel?

        6    MR. McCONNELL: Yes, Your Honor.

        7    THE COURT: Okay. Overrule the objection.

        8       Go on.

        9    MR. McCONNELL: May I have those e-mails?

10:48   10   *(Compliance)*

        11   THE COURT: In fact, it must have been because here

        12   is -- that is Exhibit Number 5?

        13   MR. McCONNELL: Yes, Your Honor.

        14   THE COURT: It was objected to, failure to

10:48   15   authenticate the exhibit, hearsay, double hearsay, improper

        16   predicate. Those were the objections that you filed, and they

        17   are overruled. It is admitted into evidence.

        18       Go on.

        19   BY MR. McCONNELL:

10:49   20   Q  Agent Petrowski, I'm showing you Exhibit 5, Bates Number

        21   5-9. Do you see the exhibit?

        22   A  Yes.

        23   Q  Who is this exhibit to and who is it from?

        24   A  It is from djblazeblog@yahoo.com with the name of Jeff

10:49   25   Williamson affixed to it.

E X H I B I T

C

Trial Transcripts Docket 488, page 362, lines 10-25 to
page 368, lines 1-7. This portion of the trial transcript shows
that Judge David Hittner making a ruling excluding this evidence
a third discovery violation by J. Hileman. But J Hileman wrongfully
and unlawfully showed the excluded evidence anyway for demonstration
purposes in violation of that order and my Due Process rights
protected under the Fifth Amendment to the U.S. Constitution.
SEE Trial Transcripts Docket No 488, page 369, lines 6-25)
that shows J. Hiles showed that excluded evidence in violation of
Hittners Ruling and my rights.

*Hileman Direct of Eric Reese*

Docket No 488

14:39   1   types of submissions they were?

2           MR. WILLIAMSON:  Excuse me, Judge Hittner.  I <u>object</u>

3   <u>to this.  We have not received information until -- well, I</u>

4   <u>didn't receive anything until a few days ago from Mr. Essmyer.</u>

14:40   5   <u>They never provided the information to him until after</u>

6   <u>February 4.  Again, the discovery deadline has long since</u>

7   <u>expired.  The purpose of Rule 16 is to minimize the surprise at</u>

8   <u>trial.  I haven't prepared for this.</u>

9           MR. HILEMAN:  Your Honor, first of all, the

14:40   10  communication on the screen they have had for quite some time.

11          THE COURT:  How long?

12          MR. HILEMAN:  Over a year, since he was arrested.

13          MR. WILLIAMSON:  We haven't had --

14          THE COURT:  Wait a second.  Let him finish.

14:40   15          MR. HILEMAN:  The communication on the screen they

16  have had since 2008.  Granted the information he is about to

17  discuss about other submissions of the defendant have not been

18  provided until we got them in February of this year.

19          I may say, Your Honor, we can refrain from going

14:40   20  into these matters and call this gentleman as a rebuttal

21  witness after any defense is put on, but it would seem to me to

22  be the right thing to do --

23          THE COURT:  Why did it take so long to get these?

24  It's ready to go to trial.  How are they going to prepare if

14:41   25  they get it at the last minute?

Docket No
488

| | |
|---|---|
| 1:41 | 1 |
| | 2 |
| | 3 |
| | 4 |
| 4:41 | 5 |
| | 6 |
| | 7 |
| | 8 |
| | 9 |
| 14:41 | 10 |

1   MR. HILEMAN: They didn't get it at the last minute.

2   They got it about a month ago. Now, whether Mr. Williamson got

3   it or not --

4   THE COURT: He got it a month ago?

5   MR. HILEMAN: Yes, Your Honor.

6   THE COURT: What's the date?

7   MR. HILEMAN: February 4th. And when I got it, I sent

8   it to Mr. Essmyer within a day or two, February 5th or

9   February 6th.

10   MR. WILLIAMSON: I didn't receive it until a few days

11   ago --

12   THE COURT: Will you stop talking? I will get back

13   with you. I'm going to finish listening to him and then I will

14   listen to you.

15   MR. HILEMAN: Mr. Williamson has gone on about how he

16   is being persecuted for his political beliefs and he has tried

17   to introduce evidence of his websites and things like that. He

18   has been granted some latitude in that regard. These matters

19   deal with the same issues he keeps bringing up. These are the

20   types of information --

21   THE COURT: Did they have notice of this?

22   MR. HILEMAN: Of course.

23   THE COURT: Let me ask you this: There is a

24   difference between him testifying as to something versus

25   providing the documents. Correct?

Docket No
488

*Hileman Direct of Eric Reese*

14:42    1          MR. HILEMAN:  Correct.

         2          THE COURT:  All right.  So can he testify to it if the

         3   documents don't come in?

         4          MR. HILEMAN:  Of course, he can, Your Honor.

14:42    5          THE COURT:  As to the history.  All right.  Now, you

         6   say that -- why do the documents have to come in?

         7          MR. HILEMAN:  They don't have to.  As the Court notes,

         8   his objection is to testimony.  I have not offered these

         9   documents at all.  Granted the Court has a discovery deadline

14:42   10   for exhibits, and we tried our best to provide that.  But there

        11   is no way we can just tell a defendant or defense every aspect

        12   of a person's testimony and a witness -- we never do that in

        13   regards to a witness.

        14          THE COURT:  Now, your response?

14:42   15          MR. WILLIAMSON:  Well, Judge, again, the inability of

        16   me to be able to prepare for this -- excuse the fairness of the

        17   entire system.  I just received these a few days ago.  I don't

        18   know when Mr. Essmyer received them, but I am not prepared for

        19   this.  I'm not prepared to cross-examine this witness.  And,

14:43   20   quite frankly, I think it will prejudice the jury in that

        21   respect.

        22          THE COURT:  Prejudice the jury?  What do you mean by

        23   that?

        24          MR. WILLIAMSON:  Well, I just think that they keep,

14:43   25   you know, trying to introduce the same thing.

28

*Hileman Direct of Eric Reese*                    Docket No
                                                        488

```
4:53    1        THE COURT:  March 1st?

        2        MR. ESSMYER:  Yes, Your Honor.

        3   ⟶    THE COURT:  There is lots coming in late.  They are

        4   just finding it, they're just finding it, and the objection of

4:53    5   the defendant is sustained.  It's out.  All that stuff is out.

        6   We are going to get stuff that they had in advance so he could

        7   get prepared for it.

        8            Call the jury back in.

        9        (Jury present)

14:54  10        THE COURT:  Go right ahead.

       11   BY MR. HILEMAN:

       12   Q    This tip was received on February 29, 2008; is that

       13   correct?

       14   A    Correct.

14:55  15   Q    That's a few months before June 27, 2008; is that right?

       16   A    I'm sorry.  Could you say that again?

       17   Q    Yes.  It is pretty simple.  Your tip was in February of

       18   2008 and the information on Government's Exhibit Number 1 shows

       19   June 27, 2008; is that right?

14:55  20   A    Correct.

       21   Q    Your tip was a few months before that?

       22   A    Correct.  It was in February.

       23   Q    You had indicated that when this tip was received by your

       24   unit, that it was transmitted to a special agent in Nevada; is

14:55  25   that right?
```

*Hileman Direct of Eric Reese*

Docket Entry
488

| 14:55 | 1 | A | Correct. |

2  Q  Does your record show which agent was contacted?

3  A  Yes.

4  Q  Who is that?                    *VIOLATION OF ORDER*

14:55  5  A  Special Agent Duffer.

6  Q  For demonstration purposes and not for offer of

7  admissibility, at this time I would like to show you

8  Government's Exhibit Number 13.

9  A  Okay.

14:56  10  Q  Are you familiar with the documents that make up

11  Government's Exhibit Number 13?

12  A  Yes.

13  Q  Are they documents from your unit over which you are a

14  custodian?

14:56  15  A  Yes.

16  Q  Did you provide those in anticipation of your testimony?

17  A  Yes.

18  Q  These are records kept in the ordinary course of business

19  of your unit?

14:56  20  A  Yes.

21  MR. HILEMAN:  Nothing further, Your Honor.  I will

22  pass the witness.

23  THE COURT:  Go right ahead.

24  MR. WILLIAMSON:  Thank you, Judge.

14:56  25  Your Honor, may I approach the projector, please?

UNITED STATES OF AMERICA v JEFF HENRY WILLIAMSON

CRIMINAL NO: H-08-539

TRANSCRIPT SUMMARY

The transcripts are provided as according to chronological
dates in which the hearings or proceedings were held in this case.

1. Docket No 178: Transcript for counsel determination held on
August 26, 2008.

2. Docket No 179: Transcript for Arraignment and Detention
hearing held on August 28, 2008.

3. Docket No 265: Transcript for Arraignment and Detention
hearing held on September 3, 2008

4. Docket No 106: Transcript for Detention Hearing held on
September 8, 2008.

5. Docket No: 99: Transcript for Pretrial Conference held on
September 25, 2008.

6. Docket No 148: Transcript for Pretrial Conference held on
October 9, 2008.

7. Docket No 264: Transcript for Pretrial Conference held on
November 18, 2008.

8. Docket No 282: Transcript for Ex Parte Hearing held on
November 25, 2008.