UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
**UNITED STATES,**                  )
                                    )
    v.                              )      Criminal Action No. 14-151 (RMC)
                                    )
**JEFF HENRY WILLIAMSON,**          )
                                    )
    **Defendant.**                  )
_____ )

**OPINION**

**Regarding Motion for Judgment of Acquittal and New Trial [Dkt. 232]**

Jeff Henry Williamson moves for a judgment of acquittal or for a new trial after a jury convicted him of threatening to assault and murder an FBI agent with intent to retaliate against the agent on account of his performance of official duties, in violation of 18 U.S.C. § 115(a)(1)(B).  Mr. Williamson represented himself at trial, with appointed Standby Counsel; he continues to proceed *pro se* with Standby Counsel.  Because a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," *see United States v. Wahl*, 290 F.3d 370, 375 (D.C. Cir. 2002), the motion for acquittal will be denied.  Further, because there was no substantial error, or in fact any error, affecting Mr. Williamson's substantial rights, the motion for new trial will be denied.  *See United States v. Walker*, 899 F. Supp. 14, 15 (D.D.C. 1995).

**I. FACTS**

FBI Special Agent (SA) Brian Schmitt and Denver Police Officer William Gallegos testified at trial in this case that from 2005 to 2006 they investigated the Defendant, Jeff

Williamson, while they served on an FBI Task Force in Denver, Colorado.[1]  Mr. Williamson had been making harassing and threatening telephone calls to the FBI Denver office, the U.S. Attorney, and the Chief Judge of the U.S. District Court for the District of Colorado.  SA Schmitt and Officer Gallegos were assigned to investigate.  As part of their investigation, Officer Gallegos issued citations for Disturbance by Use of Telephone to Mr. Williamson on October 21, 2005; December 16, 2005; and January 25, 2006.  *See* Gov't Trial Ex. 13-15 (Denver Tickets).  SA Schmitt was listed as the complaining witness on the three tickets.

On June 4, 2010, Mr. Williamson was convicted of making threatening communications in internet commerce in violation of 18 U.S.C. § 875(c); he threatened to kill an Assistant United States Attorney in Houston, to kill FBI agents, and to blow up FBI headquarters in Washington, D.C.  *See United States v. Williamson*, 4:08-CR-539 (S.D. Tex.) (Judgment filed June 4, 2010).  Mr. Williamson was sentenced to incarceration for a term of forty-two months and supervised release for a term of three years.  When Mr. Williamson completed his sentence, he was released.  He violated the terms of his supervision by threatening a realtor and brandishing a false gun.  His release was revoked.  Mr. Williams completed a second period of incarceration and was released in Texas on November 29, 2013.  He arrived in Washington, D.C. sometime before May 2014.

Mr. Williamson operates websites titled www.watchdogblog.webs.com, www.dojfbi.webs.com, and numerous others, purporting to act as a government watchdog.  Without evidentiary support, Mr. Williamson claims that (1) SA Schmitt and Officer Gallegos acted illegally in issuing the three citations in Denver and (2) since the tickets were issued in 2005-2006, SA Schmitt, working with FBI and other law enforcement agents across the country,

---

[1] The trial transcript has not been prepared.  This Opinion describes the trial testimony to the best of the Court's recollection.

has "gangstalked," harassed, and otherwise caused Mr. Williamson financial and other damage due to Mr. Williamson's websites.

Mr. Williamson wrote numerous letters to government officials complaining about SA Schmitt's alleged misconduct. He sent letters to:

- Inspector General of the Department of Justice Glenn Fine, dated May 18, 2009 and August 11, 2011;

- President of the United States Barack Obama and Vice President Joseph Biden, dated May 21, 2009;

- Unit Chief Anglela L. Byers, Inspection Division of the FBI, dated June 25, 2009;

- Judge David Hittner, U.S. District Court for the Southern District of Texas, dated February 10, 2011; and

- U.S. Congress, House of Representatives Committee on Government Reform, dated January 21, 2013.

*See* Gov't Trial Ex. 24 (Stipulation). Further, on January 20, 2011, Mr. Williamson sent a letter to SA Schmitt complaining about the three tickets issued in Denver. The letter accused SA Schmitt of writing "three frivolous tickets" and claimed that SA Schmitt was harassing and stalking Mr. Williamson. *See* Gov't Trial Ex. 16 (1/20/2011 Letter).

On June 2, 2014, Mr. Williamson left fourteen voicemail messages for an Assistant U.S. Attorney in Washington, D.C. *See* Gov't Trial Ex. 2-12, 26-28 (Voicemail Recordings); *see also* Def. Ex. 8 (Voicemail Tr.); Voicemail Tr. [Dkt. 189-1]. In these voicemail messages, Mr. Williamson identified himself and his websites, www.watchdogblog.webs.com and www.dojfbi.webs.com. Mr. Williamson mentioned the three tickets issued in Denver by referencing the .PDF copies of the tickets posted on the dojfbi.webs.com website and threatened to "drag" SA Schmitt into court.

Five days later, on June 9, 2014, Mr. Williamson made a phone call to the FBI office in Denver, Colorado. The call was made to the number belonging to Assistant Special Agent in Charge Steve Olson and was answered by Teresa Schneider. Ms. Schneider testified at trial that the caller asked if he had reached Mr. Olson's office, and then told her to write down two website addresses: www.watchdogblog.webs.com and www.dojfbi.webs.com. The caller also told Ms. Schneider to "tell Steve Olson and Brian Schmitt I am going to hunt them down and kill them." She indicated that she recognized the caller as Mr. Williamson; she had taken calls from him within the prior month when he had identified himself.

Ten days later, on June 19, 2014, Mr. Williamson left a message on the 911 emergency line with the D.C. Metropolitan Police Department (MPD). That message stated:

> I'm being stalked down here for this website. . . . I'm an American citizen. They're trying to provoke me and entice me into violence. Uh, so they can prosecute me and put me into prison. That's entrapment. Now, how 'bout if you call the FBI and tell 'em, how 'bout if I go shoot FBI Agent Brian Schmitt in his fuckin' head? Is that gonna stop this gang stalkin' ring? How 'bout if I go shoot FBI Agent Brian Schmitt in his mother fuckin' head? . . . Call the Washington, D.C. FBI Field Office and just fuckin' tell those motherfuckers that I'm gonna shoot that motherfucker in his fuckin' head. . . . I have fuckin' reported this, they're still doin' it, and if it doesn't stop I'm gonna kill that fuckin' FBI Agent. Now what? . . . I will shoot that fuckin' FBI Agent in his fuckin' face. Now what?

Gov't Trial Ex. 1 (911 Recording); Def. Trial Ex. 5 (911 Transcript).

The single count in the Indictment arose from this June 19, 2014 message. The Indictment charged Mr. Williamson with violating 18 U.S.C. § 115(a)(1)(B), that is, threatening to assault and murder Brian Schmitt, a Special Agent with the Federal Bureau of Investigation, with intent to retaliate against SA Schmitt on account of his performance of official duties. *See*

Indictment [Dkt. 7]. Trial started on December 8, 2014, and the jury rendered a guilty verdict on December 16, 2014. *See* Minute Entry 12/16/14.

At the close of the Government's case in chief, Mr. Williamson orally moved for acquittal, and the Court denied the motion from the bench. After presenting his evidence at trial, Mr. Williamson orally renewed the motion for acquittal; the Court again orally denied the motion. Mr. Williamson now has filed a written motion for judgment of acquittal or new trial and a supplement. *See* Mot. for Acquittal [Dkt. 232]; Supplement [Dkt. 243]. The Government opposes. *See* Opp'n [Dkt. 244]; Opp'n to Supplement [Dkt. 245].

## II. LEGAL STANDARDS

### A. Motion for Judgment of Acquittal

Under Rule 29(c) of the Federal Rules of Criminal Procedure, a defendant may renew a motion for a judgment of acquittal after a guilty verdict has been rendered. Fed. R. Crim. P. 29(c). A conviction in a criminal trial should be upheld if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Wahl,* 290 F.3d 370, 375 (D.C. Cir. 2002) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319 (1979)). A court must determine whether, "viewing the evidence most favorably to the government and according the government the benefit of all legitimate inferences therefrom, a reasonable juror *must necessarily* have had a reasonable doubt as to the defendants' guilt." *United States v. Weisz*, 718 F.2d 413, 437 (D.C. Cir. 1983). "Thus a judgment of acquittal is appropriate only when there is *no* evidence upon which a reasonable juror might fairly conclude guilt beyond a reasonable doubt." *Id*. at 438; *see also United States v. Khanu*, 675 F. Supp. 2d 55, 60 (D.D.C. 2009). A court must view the prosecution's evidence in the light most favorable to the government, "drawing no distinction between direct and circumstantial evidence, and

giving full play to the right of the jury to determine credibility, weigh the evidence and draw justifiable inferences of fact." *United States v. Battle*, 613 F.3d 258, 264 (D.C. Cir. 2010) (quoting *United States v. Andrews,* 532 F.3d 900, 903 n. 1 (D.C. Cir. 2008)).  Further, a court "must presume that the jury properly carried out its functions of evaluating the credibility of witnesses, finding the facts, and drawing justifiable inferences." *United States v. Campbell*, 702 F.2d 262, 264 (D.C. Cir. 1983).  The "jury is entitled to draw a vast range of reasonable inferences from [the] evidence but may not base a verdict on mere speculation." *United States v. Long*, 905 F.2d 1572, 1576 (D.C. Cir. 1990).

### B.  Motion for New Trial

Mr. Williamson moves in the alternative for new trial.  Rule 33 provides that a court may "vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33(a).  "The determination of whether to grant a motion for a new trial is 'committed to the sound discretion of the trial judge, [and is subject to reversal] only for abuse of discretion or misapplication of the law.'"  *United States v. Gray*, 292 F. Supp. 2d 71, 76 (D.D.C. 2003) (quoting *United States v. Reese*, 561 F.2d 894, 902 (D.C. Cir. 1977)), *aff'd in relevant part sub nom. United States v. Moore*, 651 F.3d 30 (D.C. Cir. 2011).  The burden of demonstrating that a new trial would be "in the interest of justice" rests with the defendant.  *United States v. Mangieri*, 694 F.2d 1270, 1285 (D.C. Cir. 1982).  To meet this burden, a defendant must show that (1) there was a substantial error and (2) the error affected the defendant's substantial rights. *See United States v. Walker*, 899 F. Supp. 14, 15 (D.D.C. 1995) (citing *United States v. Johnson*, 769 F. Supp. 389, 395–96 (D.D.C. 1991)); *see also Kotteakos v. United States*, 328 U.S. 750, 765 (1946) (the inquiry is "whether the error itself had substantial influence").  If the defendant

shows that there was error, the burden shifts to the Government to prove harmlessness.[2] *United States v. Palmera Pineda*, 592 F.3d 199, 201 (D.C. Cir. 2010).

### III. ANALYSIS

Mr. Williamson devotes most of his motion for acquittal or new trial to recounting the over 120 motions that he filed that were decided before and during trial. *See* Mot. for Acquittal at 2-14. By merely retelling the history of the motion practice in this case, indicating which motions he filed and how the Court ruled, Mr. Williamson fails to support his motion for acquittal or new trial. He has not demonstrated that acquittal is required because "a reasonable juror must necessarily have had a reasonable doubt as to the defendant's guilt," *see Weisz*, 718 F.2d at 437, and he has not shown that a new trial is warranted due to prejudicial error, *see Walker*, 899 F. Supp. at 15.

Mr. Williamson also argues that "there was insufficient evidence introduced at trial to establish that the threatening 911 call was made with 'intent' to retaliate against FBI [SA] Schmitt on account of performance of his official duties in connection with the investigation of issuance of the tickets in 2005 and 2006 in Denver, Colorado." Mot. for Acquittal at 4. At trial, Mr. Williamson admitted during his opening statement and during his testimony that he made the 911 call on June 19, 2014. *See* Supplement at 13. He claims, however, that he "made the threatening 911 call because of FBI [SA] Brian Schmitt['s] use of D.C. agents and informants to stalk and harass him in Washington D.C. for his websites NOT for what happened in Denver Co[lorado] in 2005-2006." Supplement at 13. Notably, Mr. Williamson did not introduce evidence at trial in support of his claim that SA Schmitt stalked or harassed him, or that SA Schmitt caused others to stalk or harass him.

---

[2] Harmless error, *i.e.* "[a]ny error, defect, irregularity or variance that does not affect substantial rights," must be disregarded. Fed R. Crim. P. 52(a).

Contrary to Mr. Williamson's argument, there was substantial evidence upon which a reasonable juror could conclude that Mr. Williamson made the threatening 911 call with intent to retaliate against SA Schmitt for the performance of SA Schmitt's official duties. SA Schmitt testified that he and Officer Gallegos were part of an FBI Task Force working in Denver in 2005 and 2006. As part of their work on the Task Force, they conducted an official investigation into harassing and threatening phone calls that Mr. Williamson had made to the Denver FBI office, to the U.S. Attorney's Office, and to a federal judge. In the course of the investigation, Officer Gallegos issued three tickets for Disturbance by Use of Telephone to Mr. Williamson—on October 21, 2005; December 16, 2005; and January 25, 2006. SA Schmitt was the complaining witness on the tickets. *See* Gov't Trial Ex. 13-15. A reasonable juror could infer that SA Schmitt was performing his official duties when he acted as the complaining witness on the three tickets issued to Mr. Williamson.

The Government also presented evidence from which a rational trier of fact could have found that when Mr. Williamson made the threatening 911 call on June 19, 2014, he intended to retaliate against SA Schmitt on account of the performance of official duties, that is, SA Schmitt's involvement in the three citations issued in Denver. In the threatening 911 call itself, Mr. Williamson referenced his website and his belief that he was being stalked by SA Schmitt:

> *I'm being stalked down here for this website*. . . . I'm an American citizen. They're trying to provoke me and entice me into violence. Uh, so they can prosecute me and put me into prison. That's entrapment. *Now, how 'bout if you call the FBI and tell 'em, how 'bout if I go shoot FBI Agent Brian Schmitt in his fuckin' head? Is that gonna stop this gang stalkin' ring? How 'bout if I go shoot FBI Agent Brian Schmitt in his mother fuckin' head?*

Gov't Trial Ex. 1 (emphasis added); Def. Trial Ex. 5.  The first page of Mr. Williamson's website dojfbi.webs.com mentions the three tickets he received in Denver and asserts that they were issued illegally; the website also includes links to .PDF copies of the three Denver tickets. *See* Gov't Ex. 34, 39.  Mr. Williamson's reference to his website in the 911 call and the website's reference to the three tickets could be viewed by a reasonable juror as evidence of his intent to retaliate against SA Schmitt on account of SA Schmitt's issuance of the tickets.

        The jury could have found Mr. Williamson's intent to retaliate was further evidenced by the statements he made when he called the FBI office in Denver on June 9, 2014. Ms. Schneider testified at trial that Mr. Williamson told her to write down the website addresses for www.watchdogblog.webs.com and www.dojfbi.webs.com and that he asked her to "tell Steve Olson and Brian Schmitt I am going to hunt them down and kill them."  Again, the dojfbi.webs.com website expressly references, and contains links to, the three tickets issued to Mr. Williamson in Denver.  A reasonable juror could find that Mr. Williamson intended to retaliate against SA Schmitt on account of the issuance of the tickets.

        The fourteen voicemail messages left by Mr. Williamson on June 2, 2014 also provide evidence that could have been interpreted by the jury as revealing Mr. Williamson's intent to retaliate against SA Schmitt for the tickets issued in Denver.  In the voicemail messages, Mr. Williamson identified himself and cited the same website addresses that he gave to Ms. Schneider, watchdogblog.webs.com and dojfbi.webs.com.  *See* Gov't Trial Ex. 2-12, 26-28 (Voicemail Recordings); *see also* Def. Ex. 8 (Voicemail Tr.); Voicemail Tr. [Dkt. 189-1]. Referencing the dojfbi.webs.com website, he expressed his belief that the Denver tickets were issued illegally and that SA Schmitt had engaged in misconduct:

> To refresh your memory go to watchdogblog.webs.com, watchdogblog.webs.com and also *dojfbi.webs.com, uh, the second*

9

> *website has some evidence of some past misconduct* that some agents lied about and tried to cover up not just in Denver but in multiple districts . . . . I'm being stalked and harassed around Washington, D.C. . . . And, uh, *you can tell Brian Schmitt that he is gonna get a federal subpoena . . . and [he and Officer Gallegos] can explain what happened out in Denver as the tickets in the PDF files and what's on that website*.

Gov't Trial Ex. 4 (Voicemail 6/2/2014 at 2:29 p.m.) (emphasis added); *see also* Gov't Trial Ex. 1 (Voicemail 6/2/2014 at 1:43 p.m.) (asserting harassment by "some past Denver FBI Agents" and citing .PDF copies of tickets posted on dojfbi.webs.com); Gov't Trial Ex. 3 (Voicemail 6/2/2014 at 1:47 p.m.) (claiming dojfbi.webs.com includes evidence of past misconduct and threatening to "drag [SA Schmitt] into a federal court room . . . ."); Gov't Trial Ex. 5 (Voicemail 6/2/2014 at 2:33 p.m.) ("Now I'm telling you the government people behind this, their misconduct, their conspiracy against my rights, if it continues is most likely, most likely, gonna get somebody hurt or killed because of their complete disregard for the law and the Constitution.").

Further, a reasonable juror could find that Mr. Williamson intended to retaliate against SA Schmitt due to the issuance of the citations in Denver based on Mr. Williamson's January 20, 2011 letter to SA Schmitt. The letter stated:

> [Y]ou wrote me three frivolous tickets in retaliation for me having published over 200+ political websites about U.S. Government corruption and coverups . . . . [You] wrote the tickets in retaliation for calling your supervisors, Steve Olson and [Special Agent in Charge] Richard Powers and reporting your harassment and stalking about my political websites. Obviously, you are engaged in misconduct as described above.

*See* Gov't Trial Ex. 16.

"[A] judgment of acquittal is appropriate only when there is *no* evidence upon which a reasonable juror might fairly conclude guilt beyond a reasonable doubt." *Weisz*, 718 F.2d at 438. Here, there was substantial evidence admitted at trial from which the jury could fairly and reasonably conclude that Mr. Williamson made the 911 call with intent to retaliate

10

against SA Schmitt for the performance of his duties. SA Schmitt was assigned to investigate harassing and threatening phone calls that Mr. Williamson had made to government officials in 2005-2006. As part of the investigation, Officer Gallegos issued three tickets to Mr. Williamson for "Disturbance by Use of Telephone," and SA Schmitt was the complaining witness listed on the tickets.

Mr. Williamson testified at trial that he made the 911 call, not with intent to retaliate against SA Schmitt for the issuance of the Denver tickets, but instead with intent to retaliate against SA Schmitt for stalking and harassing him and for conspiring with others to harass him since approximately 2003. Despite his claim, Mr. Williamson did not point to evidence supporting his claim. There was no evidence introduced at trial that showed SA Schmitt knew Mr. Williamson before 2005, that SA Schmitt had contact with Mr. Williamson outside of the course of the Denver investigation and issuance of the tickets in 2005 and 2006, or that SA Schmitt had contact with law enforcement officers or others who purportedly harassed Mr. Williamson in numerous states from 2003 to 2014.

In reviewing a motion for acquittal, the Court must give "full play to the right of the jury to determine credibility, weigh the evidence and draw justifiable inferences of fact." *Battle*, 613 F.3d at 264. In light of all the evidence presented at trial, a reasonable jury could have found Mr. Williamson guilty of threatening to assault and murder SA Schmitt with intent to retaliate against SA Schmitt on account of his performance of official duties, in violation of 18 U.S.C. § 115(a)(1)(B). Thus, the motion for acquittal must be denied.

The motion for new trial also must be denied. Mr. Williamson has not pointed to any errors, let alone substantial errors, that affected his substantial rights. *See Kotteakos*, 328 U.S. at 765; *Walker*, 899 F. Supp. at 15. He cites the over 120 motions that he filed and that the

Court decided before and during trial, *see* Mot. for Acquittal at 2-14, and he indicates that he disagrees with the Court's many rulings. While these issues might be argued on appeal, they do not support his motion for new trial. Because Mr. Williamson's motion fails to meet the standard required for acquittal or new trial, the motion will be denied.

## IV. CONCLUSION

For the reasons state above, Mr. Williamson's motion for a judgment of acquittal or for a new trial [Dkt. 232] and supplement to the motion [Dkt. 243] will be denied. A memorializing Order accompanies this Memorandum Opinion.

Date: February 27, 2015                           /s/
                                                  ROSEMARY M. COLLYER
                                                  United States District Judge