### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

_____  )
                                   )
UNITED STATES,                     )
                                   )
        v.                         )          **Criminal Action No. 14-151 (RMC)**
                                   )
JEFF HENRY WILLIAMSON,             )
                                   )
        Defendant.                 )
_____  )

### OPINION ON SENTENCING

Jeff Henry Williamson represents himself, with appointed Standby Counsel.  A jury convicted him of threatening to assault and murder an FBI agent with intent to retaliate against the agent on account of his performance of official duties, in violation of 18 U.S.C. § 115(a)(1)(B).  As he admitted, Mr. Williamson made a June 19, 2014 phone call to the Metropolitan Police Department 911 emergency service in Washington, D.C.  In that call, he threatened to kill FBI Special Agent Brian Schmitt, who works in Denver, Colorado.  With an offense level of 12 and criminal history category of III, the recommended sentence under the United States Sentencing Guidelines was in the range of 15-21 months, with a statutory maximum of 10 years (120 months).  For the reasons set forth below, this Court sentenced Mr. Williamson to incarceration for 96 months and supervised release for 36 months.

### I.  FACTS

1.  Mr. Williamson was in Denver, Colorado in 2005.  He is a prolific writer of anti-government diatribes, reportedly with over 200 websites.  After he placed numerous threatening and harassing phone calls to the Denver office of the Federal Bureau of Investigation, federal judges, and various federal offices, two members of the FBI's Joint Terrorism Task Force—SA Schmitt and Denver Police Officer William Gallegos—were assigned to investigate.  As a result, Mr. Williamson was identified as the caller.  Officer Gallegos issued a misdemeanor ticket to Mr. Williamson for Disturbance by Use of the Telephone on October 21, 2005.  Mr. Williamson continued to make threatening and

1

harassing phone calls, and Officer Gallegos issued two more tickets, on December 16, 2005 and on January 25, 2006. *See* Gov't Trial Ex. 13-15 (Denver Tickets).

2. SA Schmitt signed all three citations as the complaining witness. *Id*. The tickets were later dismissed.

3. Mr. Williamson insists that the citations were bogus and were issued because of his political opinions, as expressed on his websites. For the past nine years, Mr. Williamson has mounted a relentless campaign to persuade federal officials to punish SA Schmitt for his involvement in issuing the tickets. Among others, he has written letters to:

   - Inspector General of the Department of Justice Glenn Fine, dated May 18, 2009 and August 11, 2011;

   - President Barack Obama and Vice President Joseph Biden, dated May 21, 2009;

   - Unit Chief Angela L. Byers, Inspection Division of the FBI, dated June 25, 2009;

   - Judge David Hittner, U.S. District Court for the Southern District of Texas, dated February 10, 2011; and

   - U.S. Congress, House of Representatives Committee on Government Reform, dated January 21, 2013.

   *See* Gov't Trial Ex. 24 (Stipulation); *see also* Def. Exhibit List [Dkt. 37], Attachments (Letters to Attorney General Eric Holder dated Aug. 19 and 27, 2009; Letter to FBI Director Robert Mueller dated Jan. 11, 2011; Letter to President Obama dated June 16, 2009; Letter to FBI SA Chris Swecker dated June 16, 2009).

4. Mr. Williamson also established an internet website, dojfbi.webs.com, which is largely devoted to his complaints about the tickets and his contention that the tickets are part of a government conspiracy of harassment and "gangstalking" against him—orchestrated by SA Schmitt—to stop him from exercising his right to free speech.[1]

---

[1] There was no evidence introduced at trial that showed SA Schmitt knew Mr. Williamson before 2005, that SA Schmitt contacted Mr. Williamson outside of the course of the Denver investigation and issuance of the tickets in 2005 and 2006, or that SA Schmitt instigated harassment of Mr. Williamson by law enforcement officers or others in numerous states from 2003 to 2014, as Mr. Williamson argued at trial.

5. On February 29, 2008, Mr. Williamson sent several emails to the Public Access Center Unit, FBI Headquarters, complaining about FBI harassment and threatening to kill agents. Presentence Investigation Report (PSR) [Dkt. 265] ¶ 36.

6. On May 15 and 21, 2008, Mr. Williamson called the U.S. Attorney's Office in Houston, Texas, and left voice mail messages.  In the messages, he identified himself as Jeff Williamson a/k/a DJ Blaze.[2]  He stated, "The FBI would like me to get some gasoline cocktails and come down to the U.S. Attorney's Office and f---ing throw a couple of them at the f---ing door" and "They want me to get a MAC 11 or MAC 10 and come down there and f---ing shoot the f---ing office up."  *Id.*

7. On June 27, 2008, Mr. Williamson sent an email threatening to blow up FBI headquarters:

> I have been contacting and filing complaints for about eight years.
>
> Several Officials are allowing this harassment, misconduct and abuse to continue even though after [my] financial destruction.
>
> Please advise FBI Director Mueller I will take justice into my own hands and blow the front of the J. Edgar Hoover building off to get everyone's attention—then CIA HQ and DOJ.
>
> Please read the Texas penal code-threat by justifiable force, a necessity since the DOJ wants to protect these criminals.

*Id.* (errors in original).  The email was sent from Mr. Williamson's account at djblazeblog@yahoo.com to intelligence.hpsci@mail.house.gov.  *Id.*

8. On July 1, 2008, the U.S. Attorney's Office filed a criminal complaint against Mr. Williamson in the District Court in the Southern District of Texas, Houston Division charging Threatening Communications in Interstate Commerce in violation of 18 U.S.C. § 875(c).  *See United States v. Williamson*, Case No. 4:08-CR-539 (S.D. Texas) (Compl. July 1, 2008).  An arrest warrant was issued. The basis for the Complaint was the June 27, 2008 threat to blow up FBI Headquarters.  On July 31, 2008, law enforcement located Mr. Williamson in Washington, D.C.  He was arrested and remanded to Texas for trial.

9. An Indictment was returned against Mr. Williamson on the same charge, Threatening Communications in Interstate Commerce.  *See Williamson*, Case No. 4:08-CR-539 (Indictment Aug. 13, 2008).  After a trial at which he represented himself with standby counsel, Mr. Williamson was convicted and sentenced to an above-Guidelines sentence—42 months' incarceration and 36 months' supervised release on June 4, 2010.  *See PSR* ¶ 36.

---

[2] Mr. Williamson worked for years as a disc jockey under the name DJ Blaze.

10. On January 20, 2011, while he was serving his sentence, Mr. Williamson sent a letter to SA Schmitt complaining about the three tickets issued in Denver.  The letter stated:

> [Y]ou wrote me three frivolous tickets in retaliation for me having published over 200+ political websites about U.S. Government corruption and coverups . . . .  [You] wrote the tickets in retaliation for calling your supervisors, Steve Olson and [Special Agent in Charge] Richard Powers and reporting your harassment and stalking about my political websites.  Obviously, you are engaged in misconduct as described above.

*See* Gov't Trial Ex. 16 (1/20/2011 Letter).

11. After serving his sentence on the Houston conviction, Mr. Williamson was released from custody on October 14, 2011.  Exactly one week later, on October 21, 2011, while on supervised release, he was arrested and indicted in Montgomery County, Texas, on a charge of making a Terroristic Threat.  PSR ¶ 37.  Mr. Williamson was with a realtor who advised that a background check would need to be made before he could purchase a house they had just seen. Mr. Williamson became agitated, grabbed her arm, drew a (fake) gun from his pocket, and threatened to kill her.  She flagged down a patrol car.  Mr. Williamson was arrested and sentenced to nine months in jail.  PSR ¶ 37.

12. The arrest and conviction on the Terroristic Threat charge violated Mr. Williamson's conditions of supervision.  On April 16, 2012, the Southern District of Texas revoked supervised release and sentenced him to 24 months' imprisonment.  PSR ¶ 36.

13. During his term of federal imprisonment on revocation, Mr. Williamson also wrote to another FBI Special Agent by the name of Chris Petrowski.  He warned, "If you do not arrest and charge all of the persons involved in this aggravated stalking campaign, I am going to destroy your life and career as well as FBI Brian Schmitts [sic] and all the agents who did not follow FBI policy and report his misconduct."  Sentencing Hrg., Ct. Ex. 1 (Letter postmarked May 8, 2013); *see also* PSR ¶ 7.

14. Mr. Williamson was released from custody, with no further supervised release, on November 29, 2013.  He arrived in the Washington, D.C. area about five months later, around May 2014.  He spent much of his time in front of the White House with a sign that advertised one of his websites and urged the impeachment of the President.

15. On June 2, 2014, Mr. Williamson left fourteen voicemail messages for an Assistant U.S. Attorney in the U.S. Attorney's Office in Washington, D.C.  *See* Gov't Trial Ex. 2-12, 26-28 (Voicemail Recordings); *see also* Def. Trial Ex. 8 (Voicemail Tr.).  The series of voice mails was played at trial, and Mr. Williamson's escalating anger and emotion were obvious.  In these messages, Mr. Williamson repeatedly identified himself and his websites, watchdogblog.

webs.com and dojfbi.webs.com.  Mr. Williamson mentioned the three tickets issued in
Denver by referencing the .PDF copies of the tickets posted on the dojfbi.webs.com website
and, with fulsome expletives, threatened to "drag" SA Schmitt into court.  *See, e.g.*, Gov't
Trial Ex. 3 (Voicemail 6/2/2014 at 1:47 p.m.) (claiming dojfbi.webs.com includes evidence
of past misconduct and threatening to "drag [SA Schmitt] into a federal court room . . . .");
Gov't Trial Ex. 4 (Voicemail 6/2/2014 at 2:29 p.m.) ("dojfbi.webs.com . . . has some
evidence of some past misconduct . . .   you can tell Brian Schmitt that he is gonna get a
federal subpoena . . ."); Gov't Trial Ex. 5 (Voicemail 6/2/2014 at 2:33 p.m.) ("Now I'm
telling you the government people behind this, their misconduct, their conspiracy against my
rights, if it continues is most likely, most likely, gonna get somebody hurt or killed because
of their complete disregard for the law and the Constitution."); Gov't Trial Ex. 6 (Voicemail
6/2/2014 at 7:10 p.m. ("I will drag his bitch-ass in a f----in' federal courtroom and get a
federal f---in' subpoena and roast his mother---in' ass in a witness chair.").

16.  In his 13th voicemail message, Mr. Williamson complained about perceived stalking by the
     FBI and threatened that somebody would get hurt because he would "use any force,
     including deadly force, to protect myself."  *See* Gov't Trial Ex. 11 (Voicemail 6/2/2014 at
     8:33 p.m.).

17.  In his 14th voice mail message, Mr. Williamson stated that he believed that SA Schmitt,
     President Barack Obama, and Attorney General Eric Holder were sending "gang stalkers" to
     harass him; he directed the AUSA to "tell them to send the next gang mother f----er stalker
     and I'm gonna smash them . . . . I will not be stalked and harassed . . . . I'm gonna smash the
     f--- out of them . . . ."  Gov't Trial Ex. 12 (Voicemail 6/2/2014 at 8:40 p.m.).

18.  In April and May of 2014, Mr. Williamson repeatedly telephoned the office of FBI Assistant
     Special Agent in Charge (ASAIC) Steve Olson in Denver, Colorado.  Mr. Olson's assistant,
     Teresa Schneider, answered those calls.  She testified at trial that each time Mr. Williamson
     called, he identified himself by his name and his websites, dojfbi.webs.com and
     watchdogblog.webs.com.  Mr. Williamson warned that he would take ASAIC Olson and SA
     Schmitt to court and embarrass them.

19.  On June 9, 2014, Mr. Williamson made another phone call to ASAIC Olson's office.  Ms.
     Schneider answered again.  The caller did not state his name, but instead asked if he had
     reached ASAIC Olson's office.  Then he told Ms. Schneider to write down two website
     addresses:  watchdogblog.webs.com and dojfbi.webs.com.  The caller also told Ms.
     Schneider to "tell Steve Olson and Brian Schmitt I am going to hunt them down and kill
     them."  Ms. Schneider testified that she recognized the caller as Mr. Williamson.

20.  At the Sentencing Hearing, the Government introduced into evidence records of Mr.
     Williamson's text messages to his former standby counsel in the Houston criminal case
     (Mike Essmyer), dated immediately before and on June 19, 2014.  For example, on June 13
     at 19:56 Mr. Williamson texted "If this gang stalking cont[inues] somebody is going to get

hurt or killed." The next day at 20:33 he texted "the gov[ernment] is using civilians in gang stalking they have also been sending a lot of people wearing Nike shirts that say Just Do It. The gov[ernment] is trying to provoke violence to get people hurt or killed by this conspiracy . . . ." On June 19 at 01:27, he sent the message: "Contact the D.C. FBI and police about all those stalking . . . so I can file charges  . . . The FBI is going to cause somebody to get hurt or killed protecting these criminals." *See* Sentencing Hrg., Gov't Ex. 1 (SMS Message Record May 21 to June 19, 2014).

21. On June 19, 2014, Mr. Williamson left a message on the 911 emergency line with the D.C. Metropolitan Police Department (MPD) and stated in angry and emotional tones:

> I'm being stalked down here for this website. . . . I'm an American citizen. They're trying to provoke me and entice me into violence. Uh, so they can prosecute me and put me into prison. That's entrapment. Now, how 'bout if you call the FBI and tell 'em, how 'bout if I go shoot FBI Agent Brian Schmitt in his f---in' head? Is that gonna stop this gang stalkin' ring? How 'bout if I go shoot FBI Agent Brian Schmitt in his mother f---in' head? . . . Call the Washington, D.C. FBI Field Office and just f---in' tell those mother---ers that I'm gonna shoot that mother---er in his f---in' head. . . . I have f---in' reported this, they're still doin' it, and if it doesn't stop I'm gonna kill that f---in' FBI Agent. Now what? . . . I will shoot that f---in' FBI Agent in his f---in' face. Now what?

 *See* Gov't Trial Ex. 1 (911 Recording); Def. Trial Ex. 5 (911 Transcript); PSR ¶ 12.

22. Investigation revealed that the call was placed from a cell phone to which Mr. Williamson was the subscriber with an address at the Georgetown Ministry Shelter on Wisconsin Avenue in the District. Mr. Williamson was arrested on June 20, 2014 near the White House and held for trial without bond.

23. The single count in the Indictment here arose from this June 19, 2014 message. The Indictment charged Mr. Williamson with threatening to assault and murder Brian Schmitt, a Special Agent with the Federal Bureau of Investigation, with intent to retaliate against SA Schmitt on account of his performance of official duties in violation of 18 U.S.C. § 115(a)(1)(B). *See* Indictment [Dkt. 7].

24. As he had in Houston, Mr. Williamson represented himself in pretrial and trial proceedings, with appointed standby counsel. Before trial, he peppered the Court with over 130 motions, complaints, and comments. Trial was continued from November 17, 2014 to December 8, 2014 because he sought more time to be prepared. *See* Order [Dkt. 52] (setting trial for Nov. 17, 2014); Order [Dkt. 175] (continuing trial to December 8, 2014).

25. Throughout the pretrial period, Mr. Williamson long and loudly insisted on an entrapment defense, despite repeated rulings from the Court that the facts and circumstances as he

described would not admit an entrapment defense and it would not be allowed. *See* Order [Dkt. 150]; Order [Dkt. 194]. At trial, however, Mr. Williamson's defense was based on whether his acknowledged threat against SA Schmitt was "on account of official duties," *see* 18 U.S.C. § 115(a)(B), or for other reasons.

26. In his opening statement and closing argument, Mr. Williamson told the jury that he had, in fact, made the June 19, 2014, phone call. He played it again as part of his case. His defense was predicated on convincing the jury that he was angry because of FBI harassment and gangstalking directed by SA Schmitt due to Mr. Williamson's political views, and not because of tickets that had been issued nine years ago and had long ago been dismissed.

27. The jury rendered a guilty verdict on December 16, 2014, *see* Verdict [Dkt. 234], and sentencing was set for March 10, 2015. *See* Minute Entry 12/16/14.

## II. LEGAL STANDARDS

The statute under which Mr. Williamson was charged is written to protect United States officials, United States judges, federal law enforcement officers, and their family members from threats of violence. It provides, in relevant part: "Whoever—threatens to . . . murder . . . a Federal law enforcement officer . . . with intent to retaliate against such . . . law enforcement officer on account of performance of official duties, shall be punished as provided in subsection (b)." 18 U.S.C. § 115(a)(1)(B). Subsection (b)(4) provides that "[a] threat made in violation of this section shall be punished by a fine under this title or imprisonment for a term of not more than 10 years, or both, except that imprisonment for a threatened assault shall not exceed 6 years."[3] 18 U.S.C. § 115(b)(4). United States Sentencing Guideline § 2A6.1 sets a base offense level of 12 for the crime.

---

[3] Mr. Williamson erroneously argues that the statutory maximum sentence is six years. He does not appreciate the fact that six years is the maximum sentence for a threatened assault. Ten years is the maximum sentence for a threatened murder. Mr. Williamson was convicted of threatening to assault *and* murder SA Schmitt. *See* Verdict [Dkt. 234] at 1.

The Court issued an Order on February 19, 2015, notifying Mr. Williamson that it was considering a departure upward from the sentencing guidelines as follows:  "Pursuant to U.S.S.G. § 2A6.1 comment n.4(B) and common sense, if the offense involved a prolonged period of harassing communications, an upward departure may be warranted."  Order [Dkt. 256]. In a notice coincidentally filed on the same day, the United States also notified Mr. Williamson of its intention to seek an upward departure.  *See* Notice [Dkt. 255].

In anticipation of sentencing, Mr. Williamson filed numerous pleadings, all of which the Court carefully reviewed before sentencing.  *See* Mot. for Evidentiary Hrg. [Dkt. 254]; Sentencing Mem. [Dkt. 257] & Mot. for Downward Departure [Dkt. 258]; Sentencing Mem. [Dkt. 259] & Objections to PSR [Dkt. 260]; 2d Mot. for Evidentiary Hrg. [Dkt. 261]; Resp. & Objections to Court's Notice of Possible Upward Departure [Dkt. 269]; Mot. to Correct PSR [Dkt. 270]; Objections to Gov't Proposed Upward Departure [Dkt. 271]; Mot. for Downward Departure [Dkt. 272].[4]  The United States filed its Memorandum In Aide Of Sentencing combined with a Motion for Downward Departure on March 4, 2015.[5]  *See* Sent. Mem. [Dkt. 267]; Mot. for Downward Departure [Dkt. 268].  At the Sentencing Hearing on March 10, 2014, Mr. Williamson presented two additional pleadings, which the Court took a recess to read and consider.  Those pleadings have now been filed.  *See* Objections [Dkt. 273]; Objections [Dkt

---

[4] Mr. Williamson also filed a Motion to Punish Prosecutor for Failure to Comply with Schedule [Dkt. 248] and Motion for Order to Probation Office [Dkt. 252], which the Court denied as moot before sentencing.  *See* Feb. 18, 2015 Minute Order.

[5] Mr. Williamson began his argument at the Sentencing Hearing complaining that he received the Government's sentencing memorandum just four days before sentencing.  The Government's sentencing memorandum was timely filed on March 4, 2015, and the Deputy Clerk mailed it to Mr. Williamson in D.C. Jail on the same day.  Mr. Williamson then launched into a cogent argument about the government's brief, distinguishing cases with aplomb.  The Court finds that he was well prepared and he was not disadvantaged by the date on which he received the Government's sentencing memorandum.

274].  On the record at the Sentencing Hearing, the Court ruled on all of the motions and

objections, finding Mr. Williamson's objections to the presentence report to be unfounded or

moot, denying Mr. Williamson's Motions for Downward Departure and granting the

Government's Motion for Upward Departure.  The Court sentenced Mr. Williamson to 96

months' incarceration and 36 months' supervised release, an upward departure from the U.S.

Sentencing Guideline range of 15-21 months.

## III. ANALYSIS

At sentencing, a United States District Judge must first ascertain and consider the

appropriate sentencing range recommended by Sentencing Guidelines.  However, the Guidelines

are no longer mandatory and provide recommendations based on national experience only.

*United States v. Booker,* 543 U.S. 220 (2005).  To devise a sentence that is "sufficient but not

greater than necessary," courts must also fully consider the sentencing factors identified in 18

U.S.C. § 3553(a).  Those relevant here include:

> (1) the nature and circumstances of the offense and the history and
> characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote
>> respect for the law, and to provide just punishment for the
>> offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the
>> defendant; and
>>
>> (D) to provide the defendant with needed educational or
>> vocational training, medical care, or other correctional
>> treatment in the most effective manner;
>
> (3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . .

This Court provided such analysis at the Sentencing Hearing, and issues this Sentencing Memorandum to explicate its reasoning.  Mr. Williamson already has filed notices of appeal. *See* Notice [Dkt. 275]; Notice [Dkt. 276].

As the record makes eminently clear, Mr. Williamson is competent, intelligent, and ably presented a vigorous defense.  However, the full record also reveals that Mr. Williamson has been fixated on an alleged FBI harassment and "gangstalking" campaign against him, which he attributes to SA Schmitt, at least since receiving the Denver tickets in 2005.

The jury trial on this Indictment provided a full opportunity for Mr. Williamson to cross examine SA Schmitt and Detective Gallegos, both of whom testified as witnesses for the Government and were exhaustively cross examined by Mr. Williamson.  With reference to exhibits, testimony, and admissions, the Government argued that the basis for Mr. Williamson's multi-year campaign against SA Schmitt was the citations issued in Denver.  In his defense case, Mr. Williamson re-played the 911 call for the jury and admitted again (as in his opening statement and closing argument) that he had made the call.  The Court notes that there was no doubt that the voice of the speaker on the call was the same as the voice of the Defendant at trial.

However, Mr. Williamson argued that it was ridiculous to think that his anger was tied to nine-year-old tickets that had been dismissed.  Instead, he contended that his 911 call was prompted by FBI gangstalking in the District of Columbia because of his political views and websites.  The jury was not convinced and convicted Mr. Williamson of threatening to murder SA Schmitt because the FBI Agent was the complaining witness on the 2005 and 2006 tickets,

*i.e.,* because of his official duties.  The only evidence to the contrary was Mr. Williamson's own testimony.

The offense of conviction was, therefore, proved overwhelmingly.  For purposes of sentencing, the Court considered that evidence *and* the continued course of harassment with intent to injure SA Schmitt's career and, ultimately, to kill SA Schmitt that Mr. Williamson has conducted over many years.  The Court relied on those factors, among others, in departing upward in sentencing.

Mr. Williamson argues that the Court should not depart upward based on Comment n.4(B) to U.S.S.G. § 2A6.1, which states in relevant part: "[i]f the offense involved . . . a prolonged period of making harassing communications to the same victim . . . an upward departure may be warranted."  He contends that C omment n.4(B) is inapplicable because he did not "make harassing communications *to the same victim*", *i.e*. SA Schmitt, for a prolonged period.  He points out that his June 2, 2014 voicemail messages were left for an Assistant U.S. Attorney and his June 19, 2014 call was to 911.

Mr. Williamson reads Comment n.4(B) too rigidly.[6]  The spirit behind Comment n.4(B) amply applies here.  Mr. Williamson's many threatening and harassing phone calls, texts, emails, and letters concerned SA Schmitt; they were no less threatening or harassing because the communications were made to numerous individuals.  Moreover, to prove the offense itself, Threats Against a Law Enforcement Officer, the Government does not have to show that the defendant communicated the threatening statement *directly* to the person who is the object of the threat; the statute criminalizes a threat to murder or assault a Federal law enforcement officer

---

[6] He also fails to recognize that the Sentencing Guidelines are no longer mandatory.  *See Booker,* 543 U.S. 220.

with intent to retaliate on account of performance of official duties.  *See* 18 U.S.C.

§ 115(a)(1)(b).  *See also United States v. Elonis*, 730 F.3d 321 3d Cir. 2013 (evidence was

sufficient to support jury finding that defendant's Facebook post regarding explosives was a

"true threat" and thus not protected by the First Amendment), *cert. granted*, 143 S. Ct. 2819

(2014); *United States v. Stewart*, 411 F.3d 825, 828 (7th Cir. 2005) (a "true threat" is one

"wherein a reasonable person would foresee that the statement would be interpreted by those to

whom the maker communicates . . . as a serious expression of an intention to inflict bodily harm

upon or take the life of another individual"); *United States v. Fulmer*, 108 F.3d 1486, 1494-95

(1st Cir. 1997) (a "threat" under 18 U.S.C. § 115 is a "statement that expresses an intent to inflict

bodily harm on someone" and need not be made "face to face").  In other words, to prove the

charged offense, the Government did not have to prove that Mr. Williamson communicated the

threats directly to SA Schmitt.  Similarly, to find a prolonged period of harassing

communications, the Court does not have to find that Mr. Williamson engaged in a prolonged

period of harassment directed to SA Schmitt himself; the fact that Mr. Williamson engaged in

harassing and threatening communications concerning SA Schmitt over a course of many years

is a sufficient basis for upward departure.

   Most troubling is that Mr. Williamson already has served an above-Guidelines

sentence in Texas of 42 months for threatening to blow up FBI headquarters and that sentence

failed to deter him from committing further crimes.  Indeed, *while in prison*, he threatened "to

destroy [SA Brian Schmitt's] life and career . . . ."  Sentencing Hrg., Ct. Ex. 1 (Letter

postmarked May 8, 2013).  A mere seven days after his release from prison, Mr. Williamson

violated supervised release by threatening a realtor with a fake gun.  He was sentenced in state

court to nine months for making a Terroristic Threat under Texas law, and he was sentenced in

federal court to 24 months for violating supervision.  Within just months of release on November

29, 2013, he resumed angry threats directed against SA Schmitt.  Arriving in D.C. in May 2014,

he was in an increasing state of angry hysteria on June 2, 2014, as shown by his escalating series

of calls to an AUSA, with threats to "smash" SA Schmitt and other government officials.  On

June 9, 2014, he told Ms. Schneider that he was going to "hunt them down and kill" SA Schmitt

and ASAIC Olson.  An even more virulent form of angry hysteria was evident in the June 19,

2014 call to 911, in which he explicitly and repeatedly threatened to kill SA Schmitt by shooting

him in the face.  Further, the Court has no confidence that Mr. Williamson has changed his

attitude or will be law-abiding in the future.[7]

As he has stated repeatedly, Mr. Williamson will not countenance any suggestion

that he would benefit from mental health treatment.  *See* Mot. for Evidentiary Hrg. [Dkt. 254] at

7-8 (Defendant stated that he "will NEVER agree or follow" an order requiring mental health

treatment as a condition of supervised release); Sentencing Mem. [Dkt. 257] at 13 (denying a

history of mental or emotional problems); Sentencing Mem. [Dkt. 259] at 14 ("Defendant will

NEVER consent or follow [a mental health treatment] plan even under Court order.").  He

remains an obviously troubled and dangerous person, who has spent years building up a volcano

of anger against SA Schmitt in particular and the FBI in general.

These circumstances led the Court to find that the seriousness of the offense, *see*

18 U.S.C. § 3553(a), was much greater than the words of the offense itself suggest.  To begin

---

[7] Mr. Williamson has shown no respect for law.  He has been totally unaffected by judicial
orders from this Court, as he repeatedly filed motions raising issues upon which the Court
already had ruled.  *See, e.g.*, Order [Dkt. 97] (denying motions for reconsideration regarding
request for Jencks material and motion to subpoena witnesses); Order [Dkt. 144] (denying
motions for reconsideration regarding motion to recuse and motion to subpoena witnesses);
Order [Dkt. 150] (denying motions to dismiss based on entrapment); Order [Dkt. 194] (denying
renewed proposed jury instructions for entrapment).

with, there is no reasonable or valid basis for Mr. Williamson's campaign against SA Schmitt for

an alleged gangstalking conspiracy.  Despite lengthy cross examination, Mr. Williamson could

not produce one whit of evidence from SA Schmitt or Officer Gallegos beyond Mr.

Williamson's own say-so that any harassing campaign *against him* ever existed.[8]  Mr.

Williamson harassed and threatened SA Schmitt through phone calls and letters for over eight

years.  He has repeated his threatening conduct and escalated his verbiage and anger to outright

hysteria on multiple occasions.  He has not been dissuaded by prison terms for threatening to

blow up the FBI building, threatening to kill a realtor, or violating his terms of supervised

release.  If anything, his misguided anger has been fueled.

The Court believes Mr. Williamson's statements that he will *not* follow court

orders to receive any kind of mental health treatment.  Adequate deterrence and the need to

protect the public from further crimes by the Defendant can be achieved only by a lengthy period

in prison.

A just sentence is one that is sufficient but not greater than necessary.  18 U.S.C.

§ 3553(a).  Under all the circumstances of this case, a just sentence is one that will assure safety

for SA Schmitt and other FBI agents, as well as anyone in the public who might upset Mr.

---

[8] Mr. Williamson also has complained repeatedly about alleged Government misconduct that is completely unrelated to his case.  *See, e.g.*, Mot. to Dismiss Indictment [Dkt. 26] (alleging FBI misconduct in its operation of the COINTELPRO Program om the 1970's); Offer of Proof [Dkt. 27] (same); Requested Video Files [Dkt. 210] (request to present video clips to jury regarding COINTELPRO and members of Congress calling for the impeachment of AG Holder); Requested Video Files [Dkt. 211] (request to present video clips to jury regarding, *inter alia*, Obama Care, the Benghazi attack, anthrax attacks, NSA surveillance; Government use of unmanned drones; and nuclear waste); Response and Objections to Gov't Motion for Sentencing Varying from Guideline Range [Dkt. 284] (complaining about COINTELPRO, alleging that FBI encouraged a cooperator to testify falsely in a murder trial in Boston, and attaching unnotaraized affidavit of Ted Gunderson alleging that the FBI has conducted illegal surveillance and "gangstalking" of unnamed individuals).

Williamson, for the longest period reasonable.  For the reasons given above, the Court sentenced

Mr. Williamson to 96 months (eight years), which is well above his Guidelines sentence but less

than the statutory maximum of ten years.

## IV. CONCLUSION

For the reasons state above, Defendant's Motion for Downward Departure [Dkt.

258] and Motion for Downward Departure [Dkt. 272] will be denied; and the Government's

motion for upward departure [Dkt. 268] will be granted.  A memorializing Order accompanies

this Opinion.  Further, Mr. Williamson's sentence is set forth in the Judgment and Commitment

Order issued contemporaneously with this Opinion.


Date:  March 20, 2015                                  _____/s/_____
                                                       ROSEMARY M. COLLYER
                                                       United States District Judge