# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) ) ) | |
| v. | ) ) ) | Criminal Action No. 14-151 (RMC) |
| **JEFFREY HENRY WILLIAMSON,** | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION

On December 16, 2014, Jeffrey Henry Williamson was convicted by a jury of threatening to assault and murder a Federal Bureau of Investigation (FBI) agent with intent to retaliate against the agent on account of his performance of official duties, in violation of 18 U.S.C. § 115(a)(1)(B). Mr. Williamson represented himself at trial, with appointed standby counsel. Mr. Williamson appealed his conviction and was again appointed counsel. Although appointed counsel submitted arguments on Mr. Williamson's behalf, the D.C. Circuit also permitted Mr. Williamson to file a *pro se* supplemental brief raising any additional issues he would like the Circuit to consider. The Circuit issued its decision on August 10, 2018, affirming Mr. Williamson's conviction and sentence, but remanding the case back to this Court to provide Mr. Williamson with access to jury commission records. Mr. Williamson now moves under 28 U.S.C. § 2255 for the Court to vacate, set aside, or correct his sentence. Having reviewed Mr. Williamson's § 2255 motion, supplements, motions for discovery, motions for expansion of the record, and motion for a hearing, the Court will deny the motions.

## I. FACTS

FBI Special Agent (SA) Brian Schmitt and Denver Police Officer William Gallegos testified at trial that from 2005 to 2006 they investigated the Defendant, Jeff Henry

1

Williamson, while they served on an FBI Task Force in Denver, Colorado. Mr. Williamson had been making harassing and threatening telephone calls to the FBI Denver office, the U.S. Attorney, and the Chief Judge of the U.S. District Court for the District of Colorado. SA Schmitt and Officer Gallegos were assigned to investigate. As part of their investigation, Officer Gallegos issued citations for Disturbance by Use of Telephone to Mr. Williamson on October 21, 2005; December 16, 2005; and January 25, 2006. *See* Gov't Trial Exs. 13-15 (Denver Tickets). SA Schmitt was listed as the complaining witness on the three tickets.

Although their current status is unclear, at that time Mr. Williamson maintained websites titled www.watchdogblog.webs.com, www.dojfbi.webs.com, and numerous others, in which he claimed to act as a government watchdog. Without evidentiary support, Mr. Williamson claimed that (1) SA Schmitt and Officer Gallegos acted illegally in issuing the three Denver citations and (2) since their issuance in 2005-2006, SA Schmitt had worked with FBI and other law enforcement agents across the country to "gang stalk," harass, and otherwise cause financial and other damage to Mr. Williamson due to the websites.

On June 2, 2014, Mr. Williamson left fourteen voicemail messages for an Assistant U.S. Attorney (AUSA) in Washington, D.C. *See* Gov't Trial Exs. 2-12, 26-28 (Voicemail Recordings); *see also* Def. Trial Ex. 8, Voicemail Tr. [Dkt. 189-1]. In these voicemail messages, Mr. Williamson identified himself and his websites, www.watchdogblog.webs.com and www.dojfbi.webs.com. Mr. Williamson mentioned the three tickets issued in Denver by referencing the .PDF copies of the tickets posted on the dojfbi.webs.com website and threatened to "drag" SA Schmitt into court.

Seven days later, on June 9, 2014, Mr. Williamson made a phone call to the FBI office in Denver, Colorado. The call was made to the number belonging to Assistant Special

2

Agent in Charge Steve Olson and was answered by Teresa Schneider. Ms. Schneider testified at trial that the caller asked if he had reached the office of Mr. Olson and then told her to write down two website addresses: www.watchdogblog.webs.com and www.dojfbi.webs.com. 12/9/14 am Trial Tr. [Dkt. 297] at 80. The caller also told Ms. Schneider to "tell Steve Olson and Brian Schmitt I am going to hunt them down and kill them." *Id*. at 84. She further testified that she recognized the caller as Mr. Williamson as she had taken multiple calls from him within the prior month during which he had identified himself. *Id*.

Ten days later, on June 19, 2014, Mr. Williamson left a message on the 9-1-1 emergency line with the D.C. Metropolitan Police Department (MPD). That message stated:

> I'm being stalked down here for this website. . . . I'm an American citizen. They're trying to provoke me and entice me into violence. Uh, so they can prosecute me and put me into prison. That's entrapment. Now, how 'bout if you call the FBI and tell 'em, how 'bout if I go shoot FBI Agent Brian Schmitt in his fuckin' head? Is that gonna stop this gang stalkin' ring? How 'bout if I go shoot FBI Agent Brian Schmitt in his mother fuckin' head? . . . Call the Washington, D.C. FBI Field Office and just fuckin' tell those motherfuckers that I'm gonna shoot that motherfucker in his fuckin' head. . . . I have fuckin' reported this, they're still doin' it, and if it doesn't stop I'm gonna kill that fuckin' FBI Agent. Now what? . . . I will shoot that fuckin' FBI Agent in his fuckin' face. Now what?

Gov't Trial Ex. 1 (9-1-1 Recording); Def. Trial Ex. 5 (9-1-1 Transcript).

The single count in the Indictment arose from this June 19, 2014 message. The Indictment charged Mr. Williamson with violating 18 U.S.C. § 115(a)(1)(B), that is, threatening to assault and murder Brian Schmitt, a Special Agent with the Federal Bureau of Investigation, with intent to retaliate against SA Schmitt on account of his performance of official duties. *See* Indictment [Dkt. 7]. Trial started on December 8, 2014. Mr. Williamson appeared *pro se* at trial, with standby counsel, and testified on his own behalf. In his testimony, Mr. Williamson admitted to making the relevant phone call, but stated that the threat was not based on SA

3

Schmitt's performance of official duties, but due to SA Schmitt's alleged "gang stalking." 12/12/14 Trial Tr. [Dkt. 324] at 43-45. The jury rendered a guilty verdict on December 16, 2014. *See* Minute Entry 12/16/14.

Mr. Williamson moved for judgment of acquittal and a new trial and the Court denied both motions. *See* Mem. Op. [Dkt. 262]; Order [Dkt. 263]. Mr. Williamson was sentenced to 96 months' incarceration on March 10, 2015. *See* 3/10/15 Minute Entry. Mr. Williamson appealed his conviction and sentence. During the appeal, Mr. Williamson was represented first by Stephen Leckar and then by Richard Gilbert.[1] Mr. Gilbert prepared the briefing on behalf of Mr. Williamson and raised four issues:

> First, he contends that the indictment was legally insufficient because it did not fairly inform him of the charged offense. Second, he argues that the district court erred in declining to instruct the jury on his proposed entrapment defense. Third, he submits that the district court improperly denied him access to jury-commission records. Fourth, he contends that the district court abused its discretion in several ways in sentencing him to 96 months of imprisonment.

*United States v. Williamson*, 903 F.3d 124, 129-30 (D.C. Cir. 2018). The Circuit also permitted Mr. Williamson to submit a supplemental brief on his own behalf raising any issues he believed Mr. Gilbert had missed, which were considered and discussed in the Circuit's decision. *See id*. at 137-38 ("Williamson makes a number of additional arguments in his *pro se* briefing. We have given those arguments thorough consideration and have concluded that they lack merit. We specifically address two of them here: first, Williamson argues that the district judge should have recused herself; and second, Williamson argues that his Sixth Amendment right to self-representation was violated during pre-trial proceedings."). The Circuit affirmed Mr.

---

[1] Mr. Williamson moved multiple times for the Circuit to remove Mr. Gilbert as his counsel, but the Circuit denied his requests.

Williamson's conviction and sentence; it remanded the case to the District Court to provide Mr. Williamson "access to jury-commission records consistent with 28 U.S.C. § 1867." *Id*. at 138. On remand, the Court appointed counsel to assist Mr. Williamson with the issue of jury-commission records. That counsel requested records from the jury office, which were received in October 2019. The Court set a December 13, 2019 deadline for counsel to file any necessary motions regarding the jury data and no motion was filed.

Mr. Williamson now moves under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. *See* Mot. Under 28 U.S.C. § 2255 (2255 Mot.) [Dkt. 348]. The motion is ripe for review.[2, 3]

## II. LEGAL STANDARD

A federal prisoner claiming the right to be released on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

---

[2] *See* 2255 Mot., First Suppl. to 2255 Mot. [Dkt. 358]; Second Suppl. to 2255 Mot. [Dkt. 359]; Third Suppl. to 2255 Mot. [Dkt. 360]; United States' Opp'n to Def.'s Mot. to Vacate (2255 Opp'n) [Dkt. 364]; Fourth Suppl. to 2255 Mot. [Dkt. 366]; Reply in Supp. of 2255 Mot. [Dkt. 370].

[3] While his 2255 Motion was pending Mr. Williamson filed multiple motions for discovery and other relief, which the Court will also address in this Memorandum Opinion. *See* Mot. to Take Judicial Notice [Dkt. 356]; First Mot. for Discovery [Dkt. 362]; Second Mot. for Discovery [Dkt. 363]; Third Mot. for Discovery [Dkt. 365]; First Mot. for Expansion of the Record [Dkt. 367]; Second Mot. for Expansion of the Record [Dkt. 368]; Third Mot. for Expansion of the Record [Dkt. 369]; Mot. for Evidentiary Hearing [Dkt. 372]; Fourth Mot. for Expansion of the Record [Dkt. 373]; Fifth Mot. for Expansion of the Record [Dkt. 374]; Mot. for Funds for National Experts on Ethics & Legal Duties of Prosecutors [Dkt. 375]; Fourth Mot. for Discovery [Dkt. 376]; Sixth Mot. for Expansion of the Record [Dkt. 377]; Seventh Mot. for Expansion of the Record [Dkt. 378].

Because "[s]ection 2255 is not a substitute for a direct appeal," "in order to gain relief under *any* claim, [the movant] is obliged to show a good deal more than would be sufficient on a direct appeal from his sentence." *United States v. Pollard*, 959 F.2d 1011, 1020 (D.C. Cir. 1992) (citing *United States v. Frady*, 456 U.S. 152, 165 (1982)) (emphasis in original). The petitioner has the burden of proof to demonstrate his right to such relief by a preponderance of the evidence. *See United States v. Simpson*, 475 F.2d 934, 935 (D.C. Cir. 1973).

With few exceptions, a prisoner may not raise a claim as part of a collateral attack if that claim could have been raised on direct appeal, unless he can demonstrate either: (1) "cause" for his failure to do so and "prejudice" as a result of the alleged violation, or (2) "actual innocence" of the crime of which he was convicted. *Bousley v. United States*, 523 U.S. 614, 622-23 (1998). However, "[w]here a petitioner raises claims of ineffective assistance of counsel in a § 2255 motion, he need not show 'cause and prejudice' for not having raised such claims on direct appeal, as these claims may properly be raised for the first time in a § 2255 motion." *United States v. Cook*, 130 F. Supp. 2d 43, 45 (D.D.C. 2000) (citation omitted), *aff'd*, 22 F. App'x 3 (D.C. Cir. 2001).

# III. ANALYSIS

## A. Motions for Discovery[4]

Mr. Williamson requests the following discovery from the government to support his § 2255 motion:

- "any previously undisclosed evidence or information in [the government's] possession, custody, or control, the existence of which is known, or by the exercise of due diligence may become known that is favorable to Petitioner to the issues of his guilt, innocence, or punishment, or that may bear on the credibility of a government witness, or that consist of documents, or tangible objects that are material to the defense," First Mot. for Discovery at 6, including
    - Any and all records of 9-1-1 calls made by Petitioner; and
    - Any and all emails sent by Petitioner to the Central Intelligence Agency;
- Any and all information about "gang stalking" and Petitioner located on concealed government drives; and
- All information and documentation provided to the Grand Jury that indicted Petitioner.

*See generally* Mots. for Discovery. In addition to documents and records, he also requests responses to written interrogatories directed at Deputy United States Marshal Adewale Mustapha and AUSA Frederick Yette. The interrogatories ask about the evidence that formed the basis for the Denver tickets issued in 2005 and 2006 and his 2014 indictment in the District of Columbia.

Mr. Williamson argues that the discovery is necessary because additional 9-1-1 calls and emails in which he complained of FBI gang stalking are further evidence that his threat was based on stalking and not the Denver tickets from 2005 and 2006. He insists that he would not have been found guilty if the jury had been able to consider all the calls and emails because

---

[4] Mr. Williamson also asks the Court to compel the government to respond to his multiple Freedom of Information Act (FOIA) requests. *See* First Mot. for Discovery at 14. This Court will deny that motion. If Mr. Williamson wishes to challenge any responses or lack thereof to his FOIA requests, he must file an administrative appeal of the FOIA response with the agency and then he may initiate a separate civil action against any agency that has failed to respond satisfactorily. *See* 5 U.S.C. § 552.

the jury could not have found that his admitted threat was based on the Denver tickets.  Mr. Williamson also argues the discovery will provide evidence of prosecutorial misconduct.

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). Requests for discovery on a § 2255 motion are governed by Rule 6 of the Rules Governing Section 2255 Proceedings.  Under Rule 6(a), a district court may authorize a party to conduct discovery upon a showing of "good cause," and good cause exists "'where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief.'" *Bracy*, 520 U.S. at 908-09 (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)).  Rule 6(b) of the Rules Governing Section 2255 Proceedings states that "[a] party requesting discovery must provide reasons for the request," imposing a burden on the habeas petitioner to establish that discovery is needed and appropriate.

Mr. Williamson has not demonstrated good cause to justify discovery.  He had the opportunity to challenge the government's evidence at trial and cross examine the witnesses, including Marshal Mustapha, who was the Marshal that investigated the 9-1-1 threat. *See* 12/10/14 Trial Tr. [Dkt. 309] at 21-87; 12/11/14 Trial Tr. [Dkt. 323] at 7-33.  He does not provide good cause to believe that he is entitled to ask additional questions of the witness or that the answers would be different from those given under oath at trial.

Additionally, the jury heard 14 calls from Mr. Williamson in addition to the admitted 9-1-1 call that led to the indictment and Mr. Williamson testified at length about the reason for those calls and the 9-1-1 call.  He personally told the jury that he called 9-1-1 because of gang stalking and harassment by SA Schmitt and not because of the Denver tickets.  Mr. Williamson also testified that he had made numerous other calls to various government entities

8

to complain about and report the harassment and stalking he believed to be perpetrated by SA Schmitt. Thus, the jury was presented with testimony from both parties about the reason for Mr. Williamson's admitted 9-1-1 call and threatening message and made its own decision about whether the threat was based on SA Schmitt's official duties or on harassment and stalking. The requested discovery into additional calls, covered in Mr. Williamson's testimony, would not demonstrate that Mr. Williamson is entitled to relief because it is duplicative of evidence already presented to the jury. Inasmuch as he already testified about these calls, Mr. Williamson has provided no reasons why that additional evidence would have changed the jury's finding concerning his threat to SA Schmitt.

Therefore, the Court will deny Mr. Williamson's motions for discovery.

### B. Motion to Expand the Record/Take Judicial Notice[5]

Mr. Williamson asks the Court to expand the record and/or take judicial notice of the following: (1) allegations that Bureau of Prisons (BOP) officials have been interfering with Mr. Williamson's correspondence; (2) a May 2009 Inspector General Report regarding the FBI's Disciplinary System; (3) a January 5, 2005 Article by Jon Lipsky, et al. titled "The Ambushed Grand Jury Citizens' Investigation"; (4) a list of watchdog websites created by Mr. Williamson; (5) content from Mr. Williamson's Watchdogblog; (6) an April 2011 affidavit by Ted Gunderson concerning gang stalking; (7) numerous articles from 2010-11 about gang stalking; (8) a 2009 Department of Justice (DOJ) report on stalking in the United States; (9) allegations and documents related to UFO sightings and Mr. Williamson's communications to the government about alleged sightings in 2017 and 2018, which he believes contributed to the alleged FBI gang

---

[5] Mr. Williamson attaches multiple documents to his motions to expand the record, including some trial exhibits. To the extent a document was presented at trial, it is already in the record.

stalking; and (10) unrelated and unsworn allegations of government gang stalking and spying on U.S. citizens.

Rule 7(a) of the Rules Governing Section 2255 Proceedings permits a court to "direct the parties to expand the record by submitting additional materials relating to the motion." Those additional materials might include "letters predating the filing of the motion, documents, exhibits, and answers under oath to written interrogatories propounded by the judge. Affidavits also may be submitted and considered as part of the record." Rules Governing Section 2255 Proceedings 7(b).

Mr. Williamson introduced the existence of his watchdog websites at trial and portions of the websites were entered as exhibits. The Court ruled at trial that the remaining parts of the websites were inadmissible and will not expand the record on this § 2255 motion to include previously excluded evidence. The articles on gang stalking, Mr. Gunderson's affidavit, the DOJ report on stalking, and allegations about UFO sightings and gang stalking were also raised by Mr. Williamson before and during the trial and were excluded. The Court has reviewed all of the additional exhibits submitted by Mr. Williamson, but will deny the motion to expand the record because they are not relevant to the adjudication of his § 2255 motion.

C. **Motion for Evidentiary Hearing**

Mr. Williamson asks the Court to hold an evidentiary hearing on his § 2255 motion and specifically on the government's alleged prosecutorial misconduct and violations of the rules of professional responsibility. Such a hearing is not required on a § 2255 motion when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also United States v. Morrison*, 98 F.3d 619, 625 (D.C. Cir. 1996). When the judge ruling on the § 2255 motion is the same judge who presided over the

trial, as is the case here, the decision as to whether an evidentiary hearing is necessary is within the discretion of the Court. *See Morrison*, 98 F.3d at 625. "When a § 2255 motion involves ineffective assistance of counsel, a hearing is not required if the district court determines that the 'alleged deficiencies of counsel did not prejudice the defendant.'" *United States v. Weaver*, 234 F.3d 42, 46 (D.C. Cir. 2000) (quoting *United States v. Sayan*, 968 F.2d 55, 66 (D.C. Cir. 1992)) (other citation omitted). This Court presided over Mr. Williamson's pre-trial, trial, and post-trial proceedings. As discussed below, none of Mr. Williamson's arguments raise a colorable claim for relief. Therefore, the Court will not hold an evidentiary hearing.

### D. Ineffective Assistance of Counsel

Mr. Williamson argues his appellate counsel, Richard Gilbert, was ineffective for the following reasons:

1. Mr. Gilbert failed to raise the insufficiency of the evidence that the 9-1-1 call was based on tickets, rather than gang stalking.
2. Mr. Gilbert failed to challenge the district court's exclusion of Ted Gunderson's affidavit on appeal.
3. Mr. Gilbert failed to file a petition for writ of *certiorari* with the Supreme Court.

To prevail on a claim of ineffective assistance of trial counsel, Mr. Williamson would have to show that (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) this "deficient performance prejudiced the defense," meaning "counsel's errors were so serious as to deprive the defendant of a fair trial." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *Strickland*'s framework "requires (1) showing 'counsel's representation fell below an objective standard of reasonableness' and (2) demonstrating 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *United States v. Hughes*, 514 F.3d 15, 17 (D.C. Cir. 2008) (quoting *Strickland*, 466 U.S. at 687-88, 694). A

defendant must prove his claim by a preponderance of the evidence. *See Simpson*, 475 F.2d at 935; *see also Parker v. United States*, 199 F. Supp. 3d 88, 90 (D.D.C. 2016).

The Court must consider "counsel's overall performance," *Kimmelman v. Morrison*, 477 U.S. 365, 386 (1986), and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id*. at 686. It is the petitioner's burden to show that counsel's errors were "so serious" that counsel could not be said to be functioning as the counsel guaranteed by the Sixth Amendment. *Harrington v. Richter*, 562 U.S. 86, 104 (2011).

Furthermore, the defendant must meet the second *Strickland* prong and "affirmatively prove prejudice." *Strickland*, 466 U.S. at 693. That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. To find prejudice, the petitioner must show that there is "a substantial, not just conceivable, likelihood of a different result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (internal quotation marks and citation omitted). An ineffective assistance of counsel claim is defeated if the defendant fails to demonstrate either prong.

Because Mr. Williamson represented himself at trial, he does not complain of ineffective assistance in that venue, although the principles quoted above are not wholly irrelevant. The Supreme Court has articulated the following standard for ineffective assistance of counsel in the appellate context:

> [Petitioner] must first show that his counsel was objectively unreasonable in failing to find arguable issues to appeal—that is, that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them. If [Petitioner] succeeds in such a showing, he then has the burden of demonstrating prejudice. That is, he must show a reasonable probability that, but for his counsel's [error], he would have prevailed on his appeal.

*Smith v. Robbins*, 528 U.S. 259, 285 (2000) (internal citations omitted). Appellate counsel is expected to exercise his or her professional judgment to focus the litigation and raise those claims that are most likely to succeed. *See Jones v. Barnes*, 463 U.S. 745, 751-52 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."). "It is settled that a criminal defendant has no constitutional right to have appellate counsel raise every nonfrivolous issue that the defendant requests." *United States v. Agramonte*, 366 F. Supp. 2d 83, 86-87 (D.D.C. 2005) (citing *Jones v. Barnes*, 463 U.S. at 754 n.7). Whether such decisions by counsel amount to ineffective assistance depends on the reasonableness of the choices made as to the claims pursued and not pursued; evaluating such legal judgments after the fact presents recognized difficulties. *See Smith v. Robbins*, 528 U.S. at 288. "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Id*. (internal citation omitted). Additionally, defendants do not have a right to have appointed counsel file a writ of *certiorari* to the Supreme Court. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further. Thus, we have rejected suggestions that we establish a right to counsel on discretionary appeals."); *Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982) (per curiam) (stating that a defendant who "had no constitutional right to counsel . . . could not be deprived of the effective assistance of counsel").

Mr. Williamson has not shown that Mr. Gilbert failed to raise non-frivolous arguments on appeal, much less that there is a reasonably probability that the result would have been different if Mr. Gilbert did so. Mr. Gilbert selected the four arguments he made to the appellate court and he conferred with Mr. Williamson before submitting his briefing. Additionally, the D.C. Circuit permitted Mr. Williamson to submit a brief on his own behalf and in that brief Mr. Williamson raised the three arguments he accuses Mr. Gilbert of excluding. *See United States v. Williamson*, No. 15-3018, Appellant *Pro Se* Suppl. Br. (March 24, 2017). The Circuit gave "thorough consideration" to his arguments but "concluded that they lack merit" and most did not warrant extended discussion. *United States v. Williamson*, 903 F.3d at 137. There is no basis on this record to find that Mr. Gilbert provided ineffective assistance of counsel on appeal.

Mr. Williamson's claim that Mr. Gilbert was ineffective because he failed to file a writ of *certiorari* with the Supreme Court also fails because a defendant has no right to counsel for a writ of *certiorari* because the Supreme Court is a discretionary forum. Mr. Gilbert notified Mr. Williamson of his decision not to file a writ and indicated that he could proceed *pro se* if he desired. In fact, Mr. Williamson submitted documents filed with the Supreme Court, indicating that he filed an appeal on his own behalf, as was his right but not Mr. Gilbert's obligation.

### D. Prosecutorial Misconduct[6]

Mr. Williamson contends that prosecutorial misconduct during trial violated his constitutional rights to due process under the Fifth Amendment. He supports this contention by

---

[6] Mr. Williamson asked for funds to hire experts on ethics and prosecutorial duties to assist him in raising his claim of prosecutorial misconduct. However, the Court finds that Mr. Williamson's claims of prosecutorial misconduct have been waived and lack merit. For those reasons, it will deny his motion for funds to hire an expert.

alleging that AUSA Yette misrepresented the evidence and made improper remarks when he told the jury Mr. Williamson's 9-1-1 threat was motivated by the Denver tickets and not the alleged gang stalking. In addition to his general claim of prosecutorial misconduct, Mr. Williamson argues that government counsel violated 28 U.S.C. § 530B and D.C. Bar Rules 3.8 and 8.4 at trial and on appeal, by using dishonesty, deceit, and misrepresenting the evidence to the jury and appellate panel. Prosecutorial misconduct at trial occurs when "the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 180 (1986) (internal quotation and citation omitted). The government responds that Mr. Williamson's prosecutorial misconduct claims are barred because he did not raise them on direct appeal.

It is well established that, "[w]here a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate . . . cause and actual prejudice." *Bousley*, 523 U.S. at 622 (citations and internal quotation marks omitted); *United States v. Hughes*, 514 F.3d 15, 17 (D.C. Cir. 2008) ("The procedural default rule generally precludes consideration of an argument made on collateral review that was not made on direct appeal, unless the defendant shows cause and prejudice.") (citing *Massaro v. United States*, 538 U.S. 500, 504 (2003)). To demonstrate cause, a defendant must show that "some objective factor external to the defense impeded counsel's efforts to comply with the . . . procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). For instance, a defendant may show cause by demonstrating that some "factual or legal basis for a claim was not reasonably available to counsel," or that "some interference by officials . . . made compliance impracticable." *Id.* (internal citations and quotation marks omitted).

15

A court may consider a claim that is procedurally barred only if the defendant can show that the error "'has probably resulted in the conviction of one who is actually innocent.'" *Bousley*, 523 U.S. at 623 (quoting *Murray*, 477 U.S. at 496). In this regard, "'actual innocence' means factual innocence, not mere legal insufficiency." *Id*. The defendant must demonstrate that, "'in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him.'" *Id*. (quoting *Schlup v. Delo*, 513 U.S. 298, 327-28 (1995)).

Mr. Williamson fails to meet the high bar to permit him to raise a claim that was not raised on direct appeal. His assertions of prosecutorial misconduct all center around his argument that it was improper for the government to argue that the 9-1-1 threat was due to SA Schmitt's issuance of the three Denver tickets to Mr. Williamson in 2005 and 2006, that is, due to the special agent's official duties and not the gang stalking alleged by Mr. Williamson. Mr. Williamson stresses that the government knew about his various websites and his calls complaining about stalking and harassment by SA Schmitt but falsely argued that his 9-1-1 threat was due to the Denver tickets. However, these arguments concern different perspectives on the evidence and government counsel did not make misrepresentations to the jury by arguing its theory of the case. This evidence neither illustrates misrepresentation by government counsel nor that Mr. Williamson is actually innocent. *See Bousley*, 523 U.S. at 623.

Contrary to his assertion of innocence are the answers Mr. Williamson elicited during the trial in his cross examination of witnesses about the 9-1-1 call. He asked the witnesses repeatedly if they heard mention of "tickets" or if they heard mention of harassment and stalking. *See, e.g.*, 12/10/14 Trial Tr. at 43. The record from the witnesses and Mr. Williamson's own testimony and argument is that the 9-1-1 call did not reference the Denver tickets but did allege continued harassment and stalking by SA Schmitt. The government argued

that all of Mr. Williamson's complaints arose from the three tickets issued to him, signed by SA Schmitt as the complaining witness, in 2005 and 2006. The jury heard all of the evidence, including Mr. Williamson's testimony and argument, and decided that he had threated the special agent because of the agent's official duties. The fact that Mr. Williamson disagrees with the government's presentation of the evidence and the ultimate decision of the jury is not sufficient to raise a claim of prosecutorial misconduct or demonstrate that the government's presentation of its case "so infected the trial with unfairness." *Darden*, 477 U.S. at 181.

### C. Treatment by the Bureau of Prisons

Mr. Williamson's final argument is that the BOP is violating his civil rights by harassing him, disrupting and reading his legal mail, and issuing false claims of misconduct. These claims sound in habeas and are governed by 28 U.S.C. § 2241. Under that statute, a defendant must raise challenges to his custody in the district of confinement. *See Rumsfeld v. Padilla*, 542 U.S. 426, 447 (2004). Mr. Williamson is currently incarcerated in a BOP facility located within the Eastern District of North Carolina, which is the proper jurisdiction for his habeas claims. Because the Court lacks jurisdiction over his BOP claims, they will be denied without prejudice.

## IV. CONCLUSION

For the reasons stated above, Jeff Henry Williamson's § 2255 motion [Dkt. 348], motions to take judicial notice and for expansion of the record [Dkts. 356, 367, 368, 369, 373, 374, 377, and 378], motions for discovery [Dkts. 362, 363, 365, and 376], motion for a hearing [Dkt. 372], and motion for expert funds [Dkt. 375], will be denied. His claims against the BOP, *see* Third Suppl. to 2255 Mot. at 20-57, will be denied without prejudice so that he may raise

17

them in the District Court for the Eastern District of North Carolina, which has jurisdiction over them.  A memorializing Order accompanies this Memorandum Opinion.

Date:  January 27, 2020

                                              ROSEMARY M. COLLYER
                                              United States District Judge